## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| David Hall and Jennifer Knapp, *on behalf of themselves and all others similarly situated*, | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| SEI Investments Company, SEI Investments Management Corporation, SEI Capital Accumulation Plan Administration Committee, and John Does 1-30. | |
| Defendants. | |

## NATURE OF THE ACTION

1.      Plaintiffs David Hall and Jennifer Knapp, individually and as representatives of the proposed Class and on behalf of the SEI Capital Accumulation Plan ("the Plan"), bring this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, against Defendants SEI Investments Company ("SEIC"), SEI Investments Management Corporation ("SIMC"), the SEI Capital Accumulation Plan Administration Committee ("the Committee"), and John Does 1–30 (collectively, "Defendants").

2.      Defendants breached their fiduciary duties under ERISA by selecting, retaining, and failing to monitor the Plan's investment options in a prudent and loyal manner. Rather than evaluate available investments objectively, Defendants disproportionately populated the Plan with SEI-proprietary investment products that persistently underperformed comparable alternatives. These conflicted and imprudent decisions caused substantial and avoidable losses to the Plan and its participants.

1

3.    Plaintiffs bring this action to recover those losses on behalf of the Plan under 29 U.S.C. §§ 1109 and 1132, to obtain disgorgement of Defendants' improper gains, and to secure all other relief permitted by ERISA to restore the Plan to the position it would have occupied had Defendants satisfied their fiduciary obligations.

## PRELIMINARY STATEMENT

4.    Defined contribution plans such as the Plan provide tax-advantaged retirement savings for millions of American workers. As of the second quarter of 2025, Americans held approximately $13 trillion in employer-sponsored defined contribution plans, according to Federal Reserve Board data. In these plans, participants' retirement outcomes depend entirely on the performance of the investment options selected and monitored by plan fiduciaries.

5.    Participant accounts "are limited to the value of their own investment accounts, which is determined by the market performance of employee and employer contributions, less expenses." *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1826 (2015). Because employers bear no direct financial risk from excessive fees or poor investment performance, participants shoulder the entire burden of imprudent decisions. This dynamic creates acute risks when, as here, a financial-services company sponsors a retirement plan and simultaneously offers its own proprietary investment products.

6.    ERISA imposes "strict" duties of loyalty and prudence—duties described as among "the highest known to the law." *Solis v. Koresko*, 884 F. Supp. 2d 261, 291–92 (E.D. Pa. 2012). Fiduciaries must act "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1)(A), and must employ the "care, skill, prudence, and diligence" of a knowledgeable professional managing a similar plan, *id.* § 1104(a)(1)(B).

7.      Defendants failed these obligations. Instead of evaluating investment options objectively and in the best interests of Plan participants, Defendants stocked the Plan with SEI-affiliated investment products that consistently underperformed comparable alternatives. SEI's proprietary funds—shunned by the broader marketplace, carrying persistent performance deficiencies, and lacking meaningful outside investment—dominated the Plan lineup.

8.      Although ERISA does not prohibit the use of proprietary funds, fiduciaries may select or retain them only after a rigorous, impartial process demonstrating that such funds are prudent and in participants' best interests. Defendants failed that fundamental requirement. SEI's target-date suite, equity funds, and other proprietary offerings consistently lagged peers in risk-adjusted returns. Meanwhile, similarly sized and sophisticated retirement plans overwhelmingly avoided SEI products altogether. Only one other defined contribution plan with more than $250 million in assets  offered SEI-affiliated funds.

9.      SEIC and its affiliates (collectively, "SEI") benefit from this conduct because they earn fees from the participants' investments in their proprietary investment options. As of 2024, the Plan contains 26 designated investment options, of which 22 are SEI-branded, proprietary investment options that generate fees for SEI.

10.     Defendants' mismanagement of the Plan's investment lineup and prioritization of SEI's business interests over the interests of participants and beneficiaries of the Plan constitutes a breach of the fiduciary duties of prudence and loyalty in violation of 29 U.S.C. § 1104. As a result of Defendants' violations of ERISA, the Plan has suffered millions of dollars in losses.

11.     To remedy Defendants' unlawful conduct, Plaintiffs assert claims against Defendants for breach of the fiduciary duties of loyalty and prudence (Count One) and failure to monitor fiduciaries (Count Two).

## JURISDICTION AND VENUE

12.     Plaintiffs bring this action pursuant to 29 U.S.C. § 1132(a)(2) and (3), which provide that participants in an employee retirement plan may pursue a civil action on behalf of the plan to remedy breaches of fiduciary duties and other prohibited conduct, and to obtain monetary and appropriate equitable relief as set forth in 29 U.S.C. §§ 1109 and 1132.

13.     This case presents a federal question under ERISA, and therefore this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1)(F).

14.     Venue is proper pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b) because this is the district where the Plan is administered, where the breaches giving rise to this action occurred, and where Defendants have their principal place of business.

## THE PARTIES

### PLAINTIFFS

15.     Plaintiff David Hall resides in Mableton, Georgia (Cobb County), and has an active account in the Plan that he opened in 2016. Through the Plan, Plaintiff Hall is currently invested in the following funds: PIMCO Stable Income Fund, SEI Target Date 2050 Fund, SEI Large Cap Fund, SEI US Managed Volatility Fund, SSgA S&P 500 Index Non Lending K Fund, SEI Small Cap Fund, and SEI World Equity ex-US Fund. Plaintiff Hall's account suffered losses as a result of Defendants' fiduciary breaches and would be worth more had defendants not violated ERISA as described herein. SEI has been unjustly enriched as a result of Plaintiff Hall's investment in the Plan.

16.     Plaintiff Knapp resides in King of Prussia, Pennsylvania (Montgomery County), and has an active account in the Plan that she opened in 2006. Through the Plan, Plaintiff Knapp is currently invested in the following funds: SEI High Yield Bond Fund, SEI Target Date 2050

Fund, SSgA S&P 500 Index NL K Fund, SEI US Managed Volatility Fund, SSgA Russell Small/Mid Cap Index Fund, SEI Small Cap Fund, and SEI World Equity ex-US Fund. Plaintiff Knapp has also invested in SEI stock through the Plan. Plaintiff Knapp's account suffered losses as a result of Defendants' fiduciary breaches and would have been worth more had defendants not violated ERISA as described herein. SEI has been unjustly enriched as a result of Plaintiff Knapp's investment in the Plan.

## THE PLAN

17.    The SEI Capital Accumulation Plan was established by SEI Investments Company in 1983. It is an "employee pension benefit plan" under 29 U.S.C. § 1002(2)(A) and a "defined contribution plan" under 29 U.S.C. § 1002(34). It is a 401(k) plan qualified under 26 U.S.C. § 401.

18.    The Plan covers eligible employees and former employees of SEI. Eligible employees may make pre-tax contributions and may receive employer contributions from SEI. Participants direct their retirement savings among a menu of designated investment alternatives. With the exception of three State Street index funds and the PIMCO collective investment trust, all investment options offered through the Plan are SEI-proprietary products.

## DEFENDANTS

19.    Defendant SEIC is a provider of investment processing, investment management, and investment operations platforms headquartered in Oaks, Pennsylvania. SEIC is the "plan sponsor" within the meaning of 29 U.S.C. § 1002(16)(B), and a "named fiduciary" of the Plan under 29 U.S.C. § 1102(a)(2). SEIC, acting at all relevant times through its Board of Directors, receives periodic reports from the Committee on the performance of the Plan's investment options. SEIC also appoints members of the Committee. In addition, SEIC has the option to receive reports from the Committee regarding the overall operation and administration of the Plan. Based on its

duties and authority with respect to the Plan, SEIC is a fiduciary under 29 U.S.C. § 1002(21)(A)(i) and (iii).

20.     Defendant SIMC is a registered investment advisor firm and an indirect subsidiary of SEIC. SIMC is the Plan's fiduciary investment advisor. In this role, SIMC advises other Plan fiduciaries with respect to the Plan's investment menu. SIMC also performs investment advisory services for SEI's proprietary funds, including proprietary funds that are offered within the Plan, and earns profits in the form of investment management fees for the performance of those services. Based on its duties with respect to the Plan and the Plan's investments, SIMC is a fiduciary under 29 U.S.C. § 1002(21)(A)(ii).

21.     Defendant SEI Capital Accumulation Plan Administration Committee, referred to as the Committee herein, is a committee of SEI employees appointed and overseen by SEIC. The Committee is a "named fiduciary" of the Plan under 29 U.S.C. § 1102(a)(2). The Committee has various Plan maintenance and administration duties, including keeping Plan records, providing Plan records to other fiduciaries, and hiring Plan service providers (including SIMC as the Plan's fiduciary investment advisor). Based on its duties and authority with respect to the Plan, the Committee is a fiduciary under 29 U.S.C. § 1002(21)(A)(i) and (iii).

22.     Defendants possessed the ability to delegate their fiduciary responsibilities to any other person, persons, or entity. Any individual or entity not named in this Complaint to whom Defendants delegated fiduciary functions or responsibilities are also fiduciaries of the Plan under 29 U.S.C. §§ 1002(21)(A) and 1105(c)(2). Because any such individuals that have been delegated fiduciary responsibilities are not currently known to Plaintiff, they are collectively named in this Complaint as John Does 1-30 or "the John Doe Defendants."

23.     Each Defendant identified above as a Plan fiduciary is also subject to co-fiduciary liability under 29 U.S.C. § 1105(a)(1)-(3) because it enabled other fiduciaries to commit breaches of fiduciary duties, failed to comply with 29 U.S.C. § 1104(a)(1) in the administration of its duties, and/or failed to remedy other fiduciaries' breaches of their duties, despite having knowledge of the breaches.

## ERISA FIDUCIARY DUTIES

24.     ERISA reflects Congress's intent to safeguard the retirement assets of American workers. 29 U.S.C. § 1001(a). Its "principal object is to protect plan participants and beneficiaries." *Boggs v. Boggs*, 520 U.S. 833, 845 (1997). To prevent the "misuse and mismanagement of plan assets," *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 n.8 (1985), ERISA imposes strict fiduciary duties of loyalty and prudence—duties that courts have repeatedly described as "the highest known to the law." *Solis*, 884 F. Supp. at 291–92.

### DUTY OF LOYALTY

25.     The duty of loyalty requires fiduciaries to act "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1), and to do so with an "eye single" toward advancing those interests. *Pegram v. Herdrich*, 530 U.S. 211, 235 (2000). Fiduciaries must not place the interests of the plan sponsor or any corporate affiliate ahead of participants' interests. *See Reich v. Compton*, 57 F.3d 270, 291 (3d Cir. 1995).

26.     Fiduciaries must base investment decisions exclusively on economic value to participants. *See Dep't of Labor ERISA Adv. Op. 88-16A*, 1988 WL 222716, at *3. A fiduciary breaches the duty of loyalty when its investment choices are influenced by its own compensation or corporate relationships. *See Huffman v. Prudential Ins. Co. of Am.*, 2017 WL 6055225, at *8

(E.D. Pa. Dec. 7, 2017). Maintaining "complete and undivided loyalty" is a "cardinal obligation." *Perez v. Koresko*, 86 F. Supp. 3d 293, 383 (E.D. Pa. 2015), *aff'd*, 646 F. App'x 230 (3d Cir. 2016).

**DUTY OF PRUDENCE**

27.     The duty of prudence requires fiduciaries to exercise the "care, skill, prudence, and diligence" that a prudent person would utilize in managing a similar plan." 29 U.S.C. § 1104(a)(1)(B). This is not a lay person standard, but instead "requires expertise in a variety of areas, such as investments." DEP'T OF LABOR, *Meeting Your Fiduciary Responsibilities* (Sept. 2017), at 2.[1]

28.     The duty of prudence applies both to initial investment selection and ongoing monitoring. Fiduciaries must remove imprudent investment options when circumstances—such as sustained underperformance—demonstrate that such options are no longer in participants' best interests. *Tibble*, 135 S. Ct. at 1828–29. When deciding whether to select, retain, or remove a plan investment, the duty of prudence requires that fiduciaries "employ[] . . . appropriate methods to investigate and determine the merits of . . . [the] investment." *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 434 (3d Cir. 1996). The duty to conduct an "independent investigation" of the merits of each investment is "the most basic of ERISA's investment fiduciary duties." *Id.* at 435.

29.     In defined contribution plans, fiduciaries must create and maintain a diversified menu of prudent investment options. 29 U.S.C. § 1104(a)(1)(C); 29 C.F.R. § 2550.404c-1(b)(1)(ii). These "designated investment alternatives" are the exclusive options through which participants may invest their retirement savings.  Accordingly, fiduciaries must:

- thoroughly evaluate available investment options;

---

[1] https://www.dol.gov/sites/default/files/ebsa/about-ebsa/our-activities/resource-center/publications/meeting-your-fiduciary-responsibilities.pdf.

- compare each option against reasonable alternatives;

- monitor performance and costs over time; and

- remove or replace investments that become imprudent.

30.     Larger plans—such as the Plan—typically have access to superior, lower-cost institutional investment vehicles. Fiduciaries must leverage this scale for participants' benefit. *See* 44 Fed. Reg. 37221, 37224 (June 26, 1979).

## PRUDENT AND LOYAL MANAGEMENT OF A DEFINED CONTRIBUTION PLAN INVESTMENT MENU

31.     Fiduciaries of defined contribution plans must construct and maintain a diversified, prudently selected menu of investment options. 29 U.S.C. § 1104(a)(1)(C); 29 C.F.R. § 2550.404c-1(b)(1)(ii). Participants rely heavily on the fiduciary-constructed menu, as they typically may invest only among the designated options offered. Fiduciaries therefore must prudently select the initial investment alternatives and continuously monitor them throughout the life of the plan. 29 C.F.R. § 2550.404c-1(d)(2)(iv).

32.     Plan size significantly influences fiduciary expectations. Larger plans have access to superior, lower-cost institutional investment vehicles and are expected to leverage that scale for participants' benefit. As a result, the ERISA regulations embrace plan size as a factor for evaluating fiduciary decision-making. *Rules and Regulations for Fiduciary Responsibility; Investment of Plan Assets Under the "Prudence Rule"*, 44 Fed. Reg. 37221, 37224 (June 26, 1979) (stating that "a fiduciary of a plan with assets of $50,000" would not be expected to use "the same investment management techniques as would a fiduciary of a plan with assets of $50,000,000").

### A.     Investment Structures and Asset Classes

33.     Each designated investment alternative is generally a pooled investment vehicle, which typically includes mutual funds, collective investment trust funds ("CIT funds"), and

separate accounts. INVESTMENT COMPANY INSTITUTE, *The BrightScope/ICI Defined Contribution Plan Profile: A Close Look at 401(k) Plans*, at 8 (Mar. 2018), www.ici.org/pdf/ppr_18_dcplan_profile_401k.pdf ("2018 ICI Study"); Ian Ayres & Quinn Curtis, *Beyond Diversification: The Pervasive Problem of Excessive Fees and "Dominated Funds" in 401(k) Plans*, 124 Yale L.J. 1476, 1485 (2015) ("*Beyond Diversification*"). These investment vehicles generally charge ongoing asset-based fees deducted monthly or quarterly.

34.     Major categories of investment options commonly include fixed investments (stable value funds, guaranteed investment contracts, and money market funds) bonds, and equities or stocks.

35.     Equity investments are generally defined by three core characteristics: the geographic market in which investment managers deploy capital (such as domestic, international, or global investments); the size of the companies they target (typically categorized as small-cap, mid-cap, or large-cap); and their investment style—growth, value, or blend. Growth funds pursue faster-growing companies, value funds focus on more established or undervalued companies, and blend funds invest in a mix of growth and value stocks, as well as companies that fall between those categories."

36.     Balanced funds are investment vehicles that allocate assets across multiple classes. Target-date funds are a specific type of balanced fund. A target-date fund provides diversified exposure—primarily to equity and fixed-income securities—and automatically adjusts its allocation to become more conservative as the selected retirement date approaches. These funds are typically offered as a series of portfolios with target years spaced five to ten years apart, enabling participants to select the fund that aligns with their anticipated retirement date. Target-

date funds generally employ a "fund-of-funds" structure, investing in underlying pooled investment vehicles in proportions determined by the manager.

37.     Target-date funds embody a "set it and forget it" approach for retirement plan participants, who generally do not intend to revisit or modify their investment choice over time. Instead, they rely on the fund manager's ongoing rebalancing to implement an appropriate long-term investment strategy throughout their retirement-saving horizon. This hands-off approach is widespread: approximately 51% of defined-contribution plan participants invest their entire account balance in a single target-date fund.[2]

### Active vs. Passive Management

38.     All designated alternatives can be either passively or actively managed. Passive funds, popularly known as "index funds," seek to replicate the performance of market indices, such as the S&P 500, by purchasing a portfolio of securities matching the composition of the index itself. James Kwak, *Improving Retirement Savings Options for Employees*, 15 U. PA. J. BUS. L. 483, 493 (2013). By following this strategy, index funds produce returns that are very close to the market segment tracked by the index. *Id.* Passive or index funds track broad market indices and provide predictable exposures at low cost.

39.     Active funds seek market outperformance but typically carry higher fees and often fail to beat benchmarks net of fees (although this potential is typically not realized). DEP'T OF LABOR, *Understanding Retirement Plan Fees and Expenses*, at 9 (Dec. 2011), http://www.dol.gov/ebsa/pdf/undrstndgrtrmnt.pdf.

---

[2] *See* MONEYWATCH, Over half of 401(k) savers invest in one kind of fund (Aug. 6, 2018), https://www.cbsnews.com/news/over-half-of-401k-savers-invest-in-one-kind-of-fund."

**Self-Directed Brokerage Accounts**

40.     A self-directed brokerage account ("SDBA") option is not a designated investment alternative, but fiduciaries may offer an SDBA option to permit investments outside the designated investment alternatives. 29 C.F.R. § 2550.404a-5(h)(4). Self-directed brokerage accounts may offer additional securities to experienced investors, but fiduciaries still must provide a prudent core menu. They cannot shift responsibility to participants by offering a brokerage window. *See DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 423 (4th Cir. 2007) ("[A] fiduciary cannot free himself from his duty to act as a prudent man simply by arguing that other funds . . . could theoretically . . . create a prudent portfolio.").

### B.     Fiduciary Considerations in Menu Construction

41.     Academic research consistently shows that participants rely heavily on fiduciaries' menu decisions and frequently use heuristics rather than informed analysis. Common behaviors include: "naïve diversification," allocating contributions evenly across all offered options regardless of quality. Jill E. Fisch & Tess Wilkinson-Ryan, *Why Do Retail Investors Make Costly Mistakes?*, 162 U. PA. L. REV. 605, 636-38 (2014); Shlomo Benartzi & Richard H. Thaler, *Naïve Diversification Strategies in Defined Contribution Plans*, 91 AM. ECON. REV. 79, 96 (2001).

42.     Additionally, once an initial investment allocation has been chosen, 401(k) participants are prone to inertia, rarely changing investment allocations once selected even where the evidence demonstrates that they should. John Ameriks & Stephen P. Zeldes, *How Do Household Portfolio Shares Vary with Age?*, at 31, 48, Columbia University Working Paper (Sept. 2004) (finding that 48 percent of participants in sample made no changes to their account in ten years and 73 percent of participants made no change to their asset allocation); Julie Agnew *et al.*, *Portfolio Choice and Trading in a Large 401(k) Plan*, 93 AMER. ECON. REV. 193, 194 (Mar. 2003)

(finding that 87 percent of 401(k) account holders made no trades in the average year and that the average 401(k) investor makes one trade every 3.85 years).

43.     Because of these well-documented behavioral tendencies, fiduciaries must curate an investment menu composed of prudent, high-quality options. Plan fiduciaries may not expose participants to inferior products merely because the plan sponsor or a related corporate affiliate offers them. The fact that participants exercise "independent control" over the assets in their accounts "does not serve to relieve a fiduciary from its duty to prudently select and monitor any . . . designated investment alternative offered under the plan." 29 C.F.R. § 2550.404c-1(d)(1)(iv).

44.     Independent empirical research confirms this risk. Financial institutions serving as plan fiduciaries that overweight their own proprietary funds harm participants. *See* Veronica Pool *et al.*, *It Pays the Menu: Mutual Fund Investment Options in 401(k) Plans*, 71 J. OF FIN. 1779 (Aug. 2016). A study found that plans administered by asset managers performed worse because those managers tended to favor their own proprietary products. Thomas Doellman & Sabuhi Sardarli, *Investment Fees, Net Returns, and Conflict of Interest in 401(k) Plans*, 39 J. OF FIN. RES. 5 (Spring 2016).

45.     A fiduciary violates ERISA when selecting or retaining funds that "charged higher fees and had lower historical returns" than readily available alternatives, especially where the only meaningful benefit is to a third party rather than plan participants. *Goldenberg v. Indel, Inc.*, 741 F. Supp. 2d 618, 633–35, 640 (D.N.J. 2010).

## DEFENDANTS' VIOLATIONS OF ERISA

I.    **DEFENDANTS USED A DISLOYAL AND IMPRUDENT PROCESS TO MANAGE THE PLAN'S INVESTMENT MENU.**

A.    **SEI's Business Model and Its Proprietary Funds.**

46.    SEI began as a provider of investment products for institutional banking clients and later expanded into offering proprietary mutual funds and CITs to retirement plans and other investors. These products do not reflect distinct strategies or exceptional management skill. Instead, they employ conventional investment approaches that consistently underperform the wider market.

47.    Independent assessments confirm SEI's underperformance. Barron's mutual fund family rankings repeatedly placed SEI among the lowest performers over both five-year and ten-year periods.

**Table 1: Barron's Mutual Fund Family Performance Rankings for SEI Since 2008**

|        | 5-Year Performance | 10-year Performance |
|--------|--------------------|---------------------|
| **2008** | 52nd out of 53 (52/53) | 48/48 |
| **2009** | 54/54 | 47/48 |
| **2010** | 52/53 | 45/46 |
| **2011** | 52/53 | N/A |
| **2012** | 49/53 | 46/46 |
| **2013** | 41/55 | 48/48 |
| **2014** | 31/56 | 44/48 |
| **2015** | 20/58 | 50/52 |
| **2016** | 36/54 | 51/53 |
| **2017** | 44/55 | 45/50 |
| **2018** | 28/55 | 34/49 |
| **2019** | 38/52 | 40/45 |
| **2020** | 43/50 | 42/44 |
| **2021** | 44/49 | 40/45 |
| **2022** | 45/49 | 43/47 |
| **2023** | 44/47 | 43/46 |
| **2024** | 43/46 | 44/46 |

48.     SEI's CIT offerings suffer from similar weaknesses because they largely invest in the same underperforming SEI mutual funds. The marketplace has rejected these products: many have minimal non-Plan investment, and in some cases the Plan is the primary or exclusive investor.

49.     Unsurprisingly, SEI's funds have been widely rejected by investors outside those participating in the Plan. Recent financial statistics published by SEI show that the Plan is the majority investor in nearly all of the SEI funds at issue.

**Table 2: Illustration of Plan Investment in SEI Funds**

| | Amount Invested by the Plan[3] | Total Amount Invested by All Investors[4] | % Investment by the Plan | % Investment by all other Investors |
|---|---|---|---|---|
| **SEI Core Fixed Income Fund** | $22,576,648 | $34,990,000 | 65% | 35% |
| **SEI Emerging Market Debt** | $5,974,183 | $6,340,000 | 94% | 6% |
| **SEI High Yield** | $12,587,538 | $13,650,000 | 92% | 8% |
| **SEI Large Cap Fund** | $100,787,897 | $132,000,000 | 76% | 24% |
| **SEI Small Cap Fund** | $43,755,190 | $49,370,000 | 89% | 11% |
| **SEI US Managed Volatility** | $13,906,371 | $14,950,000 | 93% | 7% |
| **SEI World Equity ex-US Fund** | $33,428,677 | $46,090,000 | 73% | 27% |
| **SEI Target Date 2060 Fund** | $33,240,900 | $52,720,000 | 63% | 37% |
| **SEI Target Date 2055 Fund** | $23,428,918 | $39,780,000 | 59% | 41% |
| **SEI Target Date 2050 Fund** | $50,977,140 | $79,660,000 | 64% | 36% |
| **SEI Target Date 2045 Fund** | $42,558,200 | $77,540,000 | 55% | 45% |
| **SEI Target Date 2040 Fund** | $49,004,198 | $106,890,000 | 46% | 54% |
| **SEI Target Date 2035 Fund** | $53,583,572 | $104,870,000 | 51% | 49% |

---

[3] As of December 31, 2024.
[4] As of June 30, 2025.

| | | | | |
|---|---|---|---|---|
| **SEI Target Date 2030 Fund** | $43,705,279 | $82,470,000 | 53% | 47% |
| **SEI Target Date 2025 Fund** | $24,727,358 | $43,870,000 | 56% | 44% |
| **SEI Target Date 2020 Fund** | $3,958,997 | $9,890,000 | 40% | 60% |
| **SEI Target Date 2015 Fund** | $1,566,468 | $5,230,000 | 30% | 70% |
| **SEI Target Date 2010 Fund** | $631,685 | $3,550,000 | 18% | 82% |
| **SEI Target Retirement Income Fund** | $3,095,155 | $5,360,000 | 58% | 42% |

50.     The Plan's outsized position in each of these funds demonstrates that other investors in the marketplace avoid SEI's underperforming funds and that these funds are artificially propped up by the Plan at the expense of its participants.

51.     SEI's funds have also been widely rejected by fiduciaries of other plans in the "large plan" segment of the marketplace occupied by the Plan. Only one other defined contribution plan with more than $250 million in assets has invested in any of the SEI CIT funds or SEI mutual funds that are offered in the Plan.

**B.     Defendant's Imprudent and Self-Serving Management of the Plan's Investment Menu.**

52.     Notwithstanding SEI's sustained underperformance and negligible outside adoption, Defendants overwhelmingly populated the Plan's investment menu with SEI-proprietary products. As of 2024, 22 of the Plan's 26 investment options were SEI funds.  A prudent and loyal fiduciary would not have managed the Plan's investment lineup in this manner.

53.     As illustrated below, throughout the Class Period, the Plan has been comprised almost exclusively of SEI proprietary investment options, despite historic underperformance relative to peer funds.

**Table 3: Plan Menu 2017-2024**

| | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 |
|---|---|---|---|---|---|---|---|---|
| **CIT Funds** | | | | | | | | |
| SEI Core Fixed Income Fund | x | x | x | x | x | x | x | x |
| SEI Large Cap Fund | x | x | x | x | x | x | x | x |
| SEI Small Cap Fund | x | x | x | x | x | x | x | x |
| SEI S&P 500 Index Fund | x | x | | | | | | |
| SEI World Equity ex-US Funds | x | x | x | x | x | x | x | x |
| SEI U.S. Managed Volatility Fund | x | x | x | x | x | x | x | x |
| SEI High Yield Bond Fund | x | x | x | x | x | x | x | x |
| SEI Emerging Markets Debt Fund | x | x | x | x | x | x | x | x |
| SEI Retirement Income Fund | x | x | x | x | x | x | x | x |
| SEI Target Date 2010 Fund | x | x | x | x | x | x | x | x |
| SEI Target Date 2015 Fund | x | x | x | x | x | x | x | x |
| SEI Target Date 2020 Fund | x | x | x | x | x | x | x | x |
| SEI Target Date 2025 Fund | x | x | x | x | x | x | x | x |
| SEI Target Date 2030 Fund | x | x | x | x | x | x | x | x |
| SEI Target Date 2035 Fund | x | x | x | x | x | x | x | x |
| SEI Target Date 2040 Fund | x | x | x | x | x | x | x | x |
| SEI Target Date 2045 Fund | x | x | x | x | x | x | x | x |
| SEI Target Date 2050 Fund | x | x | x | x | x | x | x | x |
| SEI Target Date 2055 Fund | x | x | x | x | x | x | x | x |
| SEI Target Date 2060 Fund | x | x | x | x | x | x | x | x |
| State Street S&P 500 Index Fund | | | x | x | x | x | x | x |
| State Street Russell Small/Mid Cap Index Fund | | | x | x | x | x | x | x |
| SSGA Global All Cap Equity ex-U.S. Index Fund | | | x | x | x | x | x | x |
| PIMCO Stable Income Fund | x | x | x | x | x | x | x | x |
| **Mutual Funds** | | | | | | | | |
| SEI Real Return Fund | x | x | x | x | x | x | x | x |
| SEI Multi-Asset Accumulation Fund | x | x | x | x | x | | | |
| SEI Multi-Asset Income Fund | | | x | x | x | x | x | |
| SEI Government Fund | x | x | x | x | x | x | x | x |
| **ETFs** | | | | | | | | |
| SEI Enhanced Low Volatility U.S. Large Cap | | | | | | | x | |
| SEI Enhanced U.S. Large Cap Momentum Factor | | | | | | | x | |
| SEI Enhanced U.S. Large Cap Value Factor | | | | | | | x | |
| SEI Enhanced U.S. Large Cap Quality Factor | | | | | | | x | |
| **Common Stock** | | | | | | | | |
| SEI Common Stock | x | x | x | x | x | x | x | x |

54.    The continuity of the funds offered in the Plan and strict reliance on SEI-affiliated products (despite their relatively poor performance) suggests that Defendants have selected and retained SEI-affiliated funds by default, in lieu of conducting an impartial investigation of options available in the marketplace.

55.    Further, the relatively minor modifications to the Plan menu that Defendants made since 2018 are not sufficient to show that they prudently and loyally managed the Plan's offerings. As Table 3, *supra*, shows, since 2018, Defendants have largely maintained SEI's proprietary investment options, despite their poor performance. Specifically, of the 32 funds offered to participants between 2018 and 2024, 28 funds are SEI proprietary funds.

56.    Of the four funds that are not proprietary to SEI, three are State Street index funds that SEI added to the Plan's investment menu in 2019 in conjunction with removing its own proprietary index fund, SEI S&P 500 Index Fund. But a fiduciary's violation of ERISA arises from its failure to manage a Plan's investment menu by maintaining underperforming investment options. This violation is not nullified merely by offering additional investment options. Instead, as Table 3 shows, the overwhelming majority of the investment options offered to Plan participants during this period are proprietary to SEI and, as detailed below, were underperforming relative to peer funds. This evinces that Defendants were acting out of their own self-interest—by maintaining funds in the Plan from which they are paid management fees—rather than acting with the requisite loyalty and prudence required by ERISA.

### THE SEI TARGET DATE SERIES

57.    The SEI Target Date Series (the "Series") has been in the Plan since at least 2008. Each Target Date Fund is designed to provide a diversified investment portfolio with asset allocation that becomes progressively more conservative as the specified target retirement date

draws nearer. The Funds invest across a broad range of asset classes and are periodically rebalanced to reduce the risk of deviating from their intended asset-allocation strategy. After reaching its target retirement date, each Target Date Fund is designed to continue becoming more conservative and ultimately merge into the SEI Retirement Income Fund.

58.     Each Target Date Fund is a collective trust designed for investors who expect to retire around the year identified in the Fund's name. Each Fund invests primarily in a combination of SEI Funds, as defined in the Declaration of Trust, according to SEI's asset-allocation strategy. The underlying SEI Funds are managed by external, independent, professional money managers selected, monitored, and replaced by Defendant SIMC. Those managers invest in U.S. and/or foreign common stocks, U.S. and/or foreign investment-grade fixed income securities, U.S. and/or foreign non-investment-grade fixed income securities, securities of real estate companies, and cash instruments. An investment in a Target Date Fund is not guaranteed and may lose value before, during, and after the target date.

59.     Analyzing the performance of the Plan's Target Date Funds against four comparable funds reveals that the SEI Target Date Funds have significantly underperformed their peers, suggesting deficiencies in the selection and monitoring process of their underlying investments. The four peer funds—T. Rowe Price Retirement I, Fidelity Freedom K6, Vanguard Target Retirement Fund I, and American Funds Target Date Retirement R6 (the "Target Date Comparator Funds")—are managed by major market vendors and were chosen due to the similar characteristics they share with the SEI funds, such as investment makeup and risk ratio.

60.     **T. Rowe Price Retirement 2050 Fund** is an actively managed target date fund with $17.6 billion in assets that invests in a diversified portfolio of T. Rowe Price equity and fixed income funds that adjust allocation over time in relation to the 2050 target retirement date. The

fund is benchmarked to the S&P Target Date 2050 Index. Morningstar classifies it in the Target-Date 2050 category, and it is rated Bronze medalist with four out of five stars.

61.    **Fidelity Freedom 2050 K6** is an actively managed target date fund with $22 billion in assets that invests in a combination of Fidelity U.S. equity, international equity, bond, and short-term funds, with allocations that adjust over time according to a glide path strategy. The fund is benchmarked to the S&P 500 Index. Morningstar classifies it in the Target-Date 2050 category, and it is rated Bronze medalist with five out of five stars.

62.    **Vanguard Target Retirement 2050 Trust I** is a passively managed target date fund with $127.7 billion in assets that invests in a diversified portfolio of Vanguard index funds representing domestic and international equities and bonds, with allocations that automatically adjust to become more conservative as 2050 approaches. The fund is benchmarked to the Target Retirement 2050 Composite Index. Morningstar classifies it in the Target-Date 2050 category, and it is rated Silver medalist with four out of five stars.

63.    **American Funds 2050 Target Date Retirement R6** is an actively managed target date fund with $40.1 billion in assets that invests in a mix of American Funds representing growth, growth-and-income, equity-income, balanced, and fixed income categories, with asset allocations that change over time according to a glide path. The fund is benchmarked to the S&P Target Date 2050 Index. Morningstar classifies it in the Target-Date 2050 category, and it is rated Gold medalist with five out of five stars.

64.    The SEI Plan's Target Dates 2010, 2015, 2020, 2025, 2030, 2035, 2040, 2045, 2050, 2055, and 2060 consistently underperformed the Target Date Comparator Funds.

65.    If Defendants had diligently and selflessly evaluated the Plan's investment menu at the start of, and throughout, the class period, there was cause for alarm. To illustrate this point,

consider the SEI Target Date 2050 Fund, which is a target date retirement fund that both Plaintiff Hall and Plaintiff Knapp have invested in. The SEI Target Date 2050 Fund is a so-called "fund of funds," which means that it is a fund that invests in other funds. Many of the funds in which the SEI Target Date 2050 Fund has invested are SEI proprietary funds.[5]

66.     When compared to peer funds, for example, the Target Date Comparator Funds, the performance of the SEI Target Date 2050 Fund before and during the Class Period should have prompted Defendants to eliminate poorly performing funds from the SEI Target Date 2050 Fund portfolio—namely the underperforming SEI funds—and take all other necessary steps to ensure that the Plan's assets were invested prudently. A prudent fiduciary would have: benchmarked SEI funds against appropriate peer groups, evaluated readily available alternatives, and replaced chronic underperformers.  Defendants failed to take these steps.

67.     The following table compares the performance of the SEI Target Date 2050 Fund to the Target Date Comparator Funds, which are four actively managed, target date 2050 funds that were selected because they are comparable to the SEI Target Date 2050 Fund in terms of size, expense ratio, percentage of equity holdings, and management type (active). These peer funds are also readily available and sponsored by well-established institutions. As the table shows, during the Class Period, the SEI Target Date 2050 Fund performed, on average, 16.09% worse than these peer funds. Based on annual contributions to the Plan, also shown in the table, this translates to a total loss to Plan participants during this period of over $4.73 million.

---

[5]     *See,  e.g.*,  SEI  Target  Date  2050  Fund  Fact  Sheet  (June  30,  2025), https://dcfunds.seic.com/docs/stdc/STDC%20Target%20Retirement%202050%20CT%201_.pdf?1125  (stating  that the SEI Target Date 2050 Fund has invested in several SEI funds, including SEI World Equity ex-US Fund, SEI U.S. Equity Factor Allocation Fund, SEI S&P 500 Index Fund, SEI Core Fixed Income Fund, SEI Dynamic Asset Allocation Fund, SEI Extended Market Index Fund, SEI Global Managed Volatility Fund, SEI Emerging Markets Debt Fund, SEI High Yield Bond Fund, and SEI Multi-Asset Return Fund).

**Table 4: SEI Target Date 2050 Fund Performance Compared to Peer Funds**

| | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 (as of Q3) | Total 2020-Q3'2025 Compounded |
|---|---|---|---|---|---|---|---|---|---|
| **SEI Target Date 2050 Fund** | -7.94 | 22.41 | 11.29 | 15.14 | -14.73 | 16.78 | 13.73 | 15.56 | 67.70 |
| T. Rowe Price Retirement 2050 Trust (Class A) F00000Z2LK | -7.36 | 25.67 | 18.74 | 17.35 | -18.83 | 21.12 | 14.17 | 15.58 | 80.77 |
| Fidelity Freedom 2050 K6 FZTKX | -8.74 | 25.65 | 18.48 | 16.79 | -18.1 | 20.87 | 14.44 | 19.5 | 87.33 |
| Vanguard Target Retire 2050 Trust I FOUSA06R66 | -7.82 | 25.07 | 16.45 | 16.6 | -17.44 | 20.25 | 14.64 | 17.82 | 82.07 |
| American Funds 2050 Trgt Date Retire R6 RFITX | -5.61 | 25.04 | 19.42 | 17.27 | -18.89 | 20.83 | 15.43 | 16.75 | 84.96 |
| Delta | -0.5575 | -2.9475 | -6.9825 | -1.8625 | 3.585 | -3.9875 | -0.94 | -1.8525 | -16.09 |
| Trailing 3 years (Compounded) | | | -10.227 | -11.406 | -5.442 | -2.398 | -1.480 | -6.652 | |
| Investment | | | $31,007,523 | $37,133,020 | $32,974,963 | $42,978,450 | $42,978,450 | $50,977,140 | |
| Loss | | | $2,165,100 | $691,602 | -$1,182,152 | $1,713,766 | $403,997 | $944,352 | $4,736,665 |

68.     The SEI Target Date 2050 Fund is one of many target date funds in the Plan. When SEI initially launched its proprietary target date funds, the funds were promptly added to the Plan, despite having no performance records. Since then, they have gained little traction in the marketplace. As Table 2 shows, this has caused SEI to depend on the Plan to prop up its target date funds; the Plan currently accounts for 49% of the total investments in these funds.[6]

69.     An impartial and prudent fiduciary in Defendants' position would have investigated other options and would not have retained these proprietary target date funds. Defendants could have obtained higher net returns for participants at comparable levels of risk with alternative target date products, as Table 4 illustrates, or by exploring a custom target date solution using an experienced target date manager outside of SEI. Defendants, however, have been constrained by SEI's interest in preserving assets under management, marketability, and revenue associated with

---

[6] SEI Target Date 2060 (63%); SEI Target Date 2055 (59%); SEI Target Date 2050 (64%); SEI Target Date 2045 (55%); SEI Target Date 2040 (46%); SEI Target Date 2035 (51%); SEI Target Date 2030 (53%); SEI Target Date 2025 (56%); SEI Target Date 2020 (40%); SEI Target Date 2015 (30%); SEI Target Date 2010 (18%).

the Plan's investment in proprietary target date funds. Tethering the Plan to proprietary target date funds has resulted in substantial losses to the Plan and participants in the Plan.

70.    In particular, Defendant SIMC breached its fiduciary duties in the selection and retention of the underlying investment of SEI's target date funds. As the advisor to SEI's target date funds, Defendant SIMC selects the underlying funds that make up each fund and is serving in a fiduciary capacity when it performs that task. As the foregoing data shows, Defendant SIMC's selection of underperforming SEI proprietary funds was not prudent or loyal. An impartial and prudent investment fiduciary employing the same target date strategy would not have included these SEI funds, and Plan participants would have earned higher net returns as a result.

### SEI SMALL CAP AND LARGE CAP FUNDS

71.    A diligent and selfless evaluation of two of the Plan's largest holdings throughout the Class Period—the SEI Small Cap Fund and the SEI Large Cap Fund—also should have caused Defendants to take steps to ensure that the Plan's assets were invested prudently, including by eliminating poorly performing funds.

72.    Analyzing the performance of the SEI Small Cap Fund against four comparable funds reveals that the Small Cap Fund has significantly underperformed its peers, suggesting deficiencies in the selection and monitoring process of their underlying investments. The four peer funds—Fidelity Stock Selector Small Cap (FDSCX), Vanguard Strategic Small-Cap Equity Inv (VSTCX), BlackRock Advantage Small Cap Core Inst (BDSIX) and Fidelity Advisor Small Cap I (FSCIX)—are managed by major market vendors and were chosen due to the similar characteristics they share with the SEI funds, such as investment makeup, risk ratio, and Morningstar category.

73.     **Fidelity Stock Selector Small Cap** is an actively managed small-cap blend fund with $5.7 billion in assets that uses fundamental analysis to select stocks, investing primarily in common stocks of companies with small markets capitalizations. The fund allocates assets across different market sectors using multiple Fidelity managers and invests in both growth and value stocks. The fund is benchmarked to the Russel 2000 Index. Morningstar classifies the fund in the Small Blend Category, and it is rated Silver medalist with five out of five stars.

74.     **Vanguard Strategic Small-Cap Equity Inv** is an actively managed small-cap blend fund with $2.2 billion in assets that uses a quantitative approach to identify attractive stocks based on improving fundamentals and valuations. The fund is benchmarked to the MSCI US Small Cap 1750 Index. Morningstar classifies the fund in the Small Blend category, and it is rated Gold medalist with five out of five stars.

75.     **BlackRock Advantage Small Cap Core Instl** is an actively managed institutional small-cap fund with $4.4 billion in assets that uses quantitative models to identify mispriced stocks. The fund is benchmarked to the Russell 2000 Index. Morningstar classifies it in the Small Blend category, and it is rated Bronze medalist with three out of five stars.

76.     **Fidelity Advisor Small Cap I** is an actively managed small-cap fund with $533 million in assets that uses fundamental analysis to select growth and value stocks. The fund is benchmarked to the Russell 2000 Index. Morningstar classifies it in the Small Blend category, and it is rated Silver medalist with five out of five stars.

77.     A diligent evaluation of the SEI Small Cap Fund, one the Plan's largest holdings throughout the relevant period, should have caused Defendants to take steps to ensure that the Plan's assets were invested prudently, including by eliminating this poorly performing fund. As the following table shows, when compared to four comparable peer funds (actively managed small

blend funds of similar size, expense ratio, and equity holding percentage), the SEI Small Cap Fund performed, on average, 15.78% worse during the Class Period. Given the Plan's investments in the SEI Small Cap Fund during this same period, this gap in performance constitutes a loss of $4.59 million to Plan participants.

**Table 5: SEI Small Cap Fund Performance Compared to Peer Funds**

| | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 (as of Q3) | Total 2020 - Q3'2025 Compounded |
|---|---|---|---|---|---|---|---|---|---|
| SEI Small Cap Fund | -11.19 | 23.43 | 12.73 | 25.04 | -17.44 | 11.42 | 16.36 | 8.1 | 63.10 |
| Fidelity Stock Selector Small Cap | -8.5 | 30.39 | 21.72 | 25.05 | -18.28 | 19.46 | 14.53 | 8.58 | 84.78 |
| Vanguard Strategic Small-Cap | -11.92 | 22.15 | 8.38 | 33.48 | -12.95 | 21.28 | 15.86 | 11 | 96.42 |
| BlackRock Advisor Small Cap | -8.83 | 32.12 | 19.57 | 14.67 | -19.87 | 16.52 | 11.86 | 10.44 | 58.15 |
| Fidelity Advisor Small Cap I | -16.76 | 32.72 | 17.48 | 31.64 | -20.5 | 18.57 | 11.52 | 8.35 | 76.15 |
| Delta | 0.31 | -5.92 | -4.06 | -1.17 | 0.46 | -7.54 | 2.92 | -1.49 | -15.78 |
| Trailing 3 years (Compounded) | | | -9.450 | -10.789 | -4.744 | -8.199 | -4.402 | -6.260 | |
| Investment | | | $41,033,910 | $49,266,371 | $38,782,026 | $40,645,748 | $40,645,748 | $43,755,190 | |
| Loss | | | $1,664,951 | $576,417 | -$178,397 | $3,063,673 | -$1,185,840 | $653,046 | $4,593,850 |

78.     The SEI Large Cap Fund performed even worse. Analyzing the performance of the SEI Large Cap Fund against four comparable funds reveals that the Large Cap Fund has significantly underperformed its peers, suggesting deficiencies in the selection and monitoring process of their underlying investments. The four peer funds— Fidelity Large Cap Stock (FLCSX), DFA US Large Company I (DFUSX), GMO Quality IV (GQEFX), and Vanguard PRIMECAP Inv (VPMCX)—are managed by major market vendors and were chosen due to the similar characteristics they share with the SEI funds, such as investment makeup, risk ratio, and Morningstar category.

79.     **Fidelity Large Cap Stock** is an actively managed large-cap fund with $8.6 billion in assets that invests in growth and value stocks using fundamental analysis of each issuer's financial condition and industry position. The fund is benchmarked to the S&P 500 Index. Morningstar classifies it in the Large Blend category, and it is rated Neutral medalist with five out of five stars.

80.     **JPMorgan US Large Cap Core Plus I** is an actively managed large-cap fund with $3.5 billion in assets that takes both long and short positions in U.S. equity securities, using a research-driven process to identify undervalued stocks while shorting overvalued ones. The fund is benchmarked to the S&P 500 Index. Morningstar classifies JLPSX in the Large Blend category. It is rated Bronze medalist with five out of five stars.

81.     **GMO Quality IV** is an actively managed large-cap fund with $15.6 billion in assets that invests primarily in equities of companies that GMO believes to be of high quality. The fund focuses on companies with strong profitability and sustainable competitive advantages. Morningstar classifies it in the Large Blend category, and it is rated Gold medalist with five out of five stars.

82.     **Vanguard PRIMECAP Inv** is an actively managed large- and mid-cap growth fund with $76.9 billion in assets managed with a long-term perspective and extremely low turnover. The fund is managed by multiple portfolio managers who independently manage portions of the fund, with notable concentrations in technology and healthcare sectors. The fund is benchmarked to the S&P 500 Index. Morningstar classifies it in the Large Blend category, and it is rated Silver medalist with five out of five stars.

83.     When compared to these actively managed large-blend funds, the SEI Large Cap Fund underperformed by an average of 32.72%, contributing an estimated $16.14 million in additional losses.

**Table 6: SEI Large Cap Fund Performance Compared to Peer Funds**

| | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 (as of Q3) | Total 2020 - Q3'2025 Compounded |
|---|---|---|---|---|---|---|---|---|---|
| **SEI Large Cap Fund** | -6.64 | 27.78 | 11.37 | 26.28 | -14.38 | 19.2 | 20.94 | 14.84 | 99.35 |
| Fidelity Large Cap Stock FLCSX | -9.15 | 31.55 | 9 | 25.83 | -7.95 | 23.52 | 26.28 | 21.53 | 139.33 |
| JPMorgan US Large Cap Core Plus I | -7.24 | 29.78 | 26.17 | 29.2 | -18.5 | 29.82 | 28.93 | 11.99 | 149.03 |
| GMO Quality IV GQEFX | 0.51 | 31.79 | 18.51 | 26.26 | -15.17 | 30.06 | 19 | 18.14 | 132.09 |
| Vanguard PRIMECAP Inv VPMCX | -2.01 | 27.78 | 17.25 | 21.81 | -15.15 | 28.09 | 13.45 | 18.03 | 107.85 |
| **Delta** | -2.17 | -2.45 | -6.36 | 0.50 | -0.19 | -8.67 | -0.98 | -2.58 | -32.72 |
| **Trailing 3 years (Compounded)** | | | -10.632 | -8.191 | -6.066 | -8.383 | -9.733 | -11.898 | |
| **Investment** | | | $85,103,847 | $101,681,198 | $82,886,032 | $87,967,193 | $87,967,193 | $100,787,897 | |
| **Loss** | | | $5,414,732 | -$513,490 | $155,411 | $7,628,955 | $857,680 | $2,602,847 | $16,146,136 |

84.    The SEI Small Cap Fund and the SEI Large Cap Fund employ common investment strategies and, as this data shows, numerous comparable non-proprietary alternatives that met or exceeded their performance during the same period were available to Defendants. Reasonable, higher-performing non-proprietary alternatives were available at all relevant times. Defendants' refusal to replace SEI's persistent underperformers underscores their failure to engage in an objective and loyal fiduciary process

85.    Taken together, Defendants' conduct reveals systemic breaches of their fiduciary duties: SEI funds consistently lagged peers and benchmarks; Defendants failed to meaningfully monitor fund performance; Underperforming proprietary funds were retained year after year; SEI's corporate and revenue interests overshadowed participants' best interests. Had Defendants followed a prudent, loyal process, the Plan would have accrued substantially more assets.

**C.    Defendants Have Been on Notice of the Plan's Underperformance for Years and Have Not Fulfilled their Fiduciary Duties by Removing Underperforming Investment Options.**

86.    The instant action is not the first attempt by Plan participants, acting on behalf of themselves and the Plan, to remedy Defendants' breaches of their fiduciary duties under ERISA. In 2018, Plan participants filed a putative class action lawsuit against Defendants alleging that Defendants breached their fiduciary duties of loyalty and prudence under ERISA by mismanaging

the Plan's investment options and prioritizing SEI's business interests over the interests of the participants.[7]

87.    Notably, nearly all of the investment options in the Plan that participants complained of in 2018 are still offered today. Indeed, an examination of Table 3, *supra*, shows that Defendants removed only **one** fund from the Plan's portfolio that existed at the time of the prior action, while maintaining all of the remaining underperforming SEI funds—21 SEI proprietary funds in total—including the SEI Large Cap Fund and SEI Small Cap Fund.

88.    Defendants' failure to remove these underperforming funds from the Plan's menu of investment options after being placed on notice by the 2018 complaint further evinces SEI's self-interest in maintaining these proprietary funds in the Plan and Defendants' breaches of their fiduciary duties of loyalty and prudence.

## II.    PLAINTIFFS LACKED KNOWLEDGE OF DEFENDANTS' CONDUCT AND PRUDENT ALTERNATIVES.

89.    Plaintiffs did not have knowledge of all material facts (including, among other things, the investment option and menu choices of fiduciaries of similar plans, the absence of SEI products in similar plans, fiduciary guidelines with respect to selection and monitoring of 401(k) menu options, expert studies on the persistence of investment underperformance, SEI's reliance on the Plan to prop up SEI funds, or the existence of superior non-proprietary options that utilize the same investment strategies as SEI-affiliated funds) necessary to understand that Defendants breached their fiduciary duties until shortly before this suit was filed.

90.    Plaintiffs did not have actual knowledge of the specifics of Defendants' decision-making processes with respect to the Plan (including Defendants' processes for selecting,

---

[7] *See Stevens v. SEI Investments Co., et al.*, No. 2:18-cv-04205 (E.D. Pa. filed Sept. 28, 20218) The *Stevens* case settled before there was a disposition regarding any of Plaintiff's claims.

monitoring, evaluating, and removing Plan investments), because this information is solely within the possession of Defendants prior to discovery. For purposes of this Complaint, Plaintiffs have drawn reasonable inferences regarding these processes based on (among other things) the facts set forth above.

91.    Documents and information relating to the management of the Plan during the relevant time (such as meeting minutes, committee charters, internal communications among members of the SEIC Board of Directors and the Committee, periodic investment reviews, investment policy statements, vendor contracts, and requests for proposals relating to any investment manager or fund searches) are not available prior to discovery. Although 29 U.S.C. § 1024(b)(4) requires plan administrators to make certain Plan governance documents available to plan participants upon written request, this provision does not include records of the day-to-day management of the Plan. *See, e.g.*, *Brown v. Am. Life Holdings, Inc.*, 190 F.3d 856, 861-62 (8th Cir. 1999) (collecting cases); *Gashlin v. Prudential Ins. Co. of Am. Ret. Sys. for U.S. Employees & Special Agents*, 286 F. Supp. 2d 407, 423 (D.N.J. 2003) (finding that 29 U.S.C. § 1024(b)(4) only requires plan administrators to provide formal documents governing the plan).

## CLASS ACTION ALLEGATIONS

92.    29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to obtain for the Plan the remedies provided by 29 U.S.C. § 1109(a). Plaintiffs seek certification of this action as a class action pursuant to this statutory provision and Federal Rule of Civil Procedure 23.

93.    Plaintiffs assert their claims in Counts I-II on behalf of a class of participants and beneficiaries of the Plan defined as follows:

All participants and beneficiaries of the SEI Capital Accumulation Plan at any time on or after January 1, 2020, excluding Defendants and employees with responsibility for the Plan's investment functions.

94.    <u>Numerosity</u>: The Class is so numerous that joinder of all Class members is impracticable. The Plan had approximately 4,000 participants during the applicable period.

95.    <u>Typicality</u>: Plaintiffs' claims are typical of the Class members' claims. Like other Class members, Plaintiffs are Plan participants and suffered injuries as a result of Defendants' mismanagement of the Plan. Defendants treated Plaintiffs consistently with other Class members with regard to the Plan. Defendants' imprudent and disloyal decisions affected all Plan participants similarly.

96.    <u>Adequacy</u>: Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests are aligned with the Class that they seek to represent. They have retained counsel experienced in complex class action litigation. Plaintiffs do not have any conflicts of interest with any Class members that would impair or impede their ability to represent such Class members.

97.    <u>Commonality</u>: Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including but not limited to:

    a.    Which Defendants are fiduciaries of the Plan;

    b.    Whether the Plan's fiduciaries breached their fiduciary duties by engaging in the conduct described herein;

    c.    Whether the Plan's fiduciaries are additionally or alternatively liable, as co-fiduciaries, for the unlawful conduct described herein pursuant to 29 U.S.C. § 1105;

d.  Whether SEIC and the Committee breached their duty to monitor other Plan fiduciaries;

e.  The proper form of equitable and injunctive relief; and

f.  The proper measure of monetary relief.

98.  Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(1)(A) because prosecuting separate actions against Defendants would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants.

99.  Class certification is also appropriate under Federal Rule of Civil Procedure 23(b)(1)(B) because adjudications with respect to individual Class members, as a practical matter, would be dispositive of the interests of the other persons not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Any award of equitable relief by the Court, such as removal of particular Plan investments or removal of a Plan fiduciary, would be dispositive of non-party participants' interests. The accounting and restoration of the property of the Plan that would be required under 29 U.S.C. §§ 1109 and 1132 would be similarly dispositive of the interests of other Plan participants.

100.  Class Certification is also appropriate under Federal Rule of Civil Procedure 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual Class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' conduct as described in this Complaint applied uniformly to all members of the Class. Class members do not have an interest in pursuing separate actions against Defendants, as the amount of each Class member's individual claims is relatively small compared to the expense and burden of individual prosecution,

and Plaintiffs are unaware of any similar claims brought against Defendants by any Class members on an individual basis. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and juridical efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

**COUNT I**
**Breach of Duties of Loyalty and Prudence**
**29 U.S.C. § 1104(a)(1)(A)-(B)**

101.    Plaintiffs incorporate by reference the allegations contained in the paragraphs above as if set forth fully herein.

102.    Defendants are fiduciaries of the Plan under 29 U.S.C. §§ 1002(21) and 1102(a)(1).

103.    29 U.S.C. § 1104 imposes fiduciary duties of prudence and loyalty upon the Defendants in their administration of the Plan and in their selection and monitoring of Plan investments.

104.    The scope of the fiduciary duties and responsibilities of the Defendants includes managing the assets of the Plan for the sole and exclusive benefit of Plan participants and beneficiaries, defraying reasonable expenses of administering the Plan, and acting with the care, skill, diligence, and prudence required by ERISA.

105.    Defendants were directly responsible for selecting prudent investment options, evaluating and monitoring the Plan's investments on an ongoing basis and eliminating imprudent ones, and taking all necessary steps to ensure that the Plan's assets were invested prudently. This includes "a continuing duty to monitor investments and remove imprudent ones[.]" *Tibble*, 135 S. Ct. at 1829.

106.    As detailed herein, Defendants failed to employ a prudent and loyal process for selecting, monitoring, and reviewing the Plan's designated investment alternatives, by prioritizing SEI's proprietary investments over superior available options, and by failing to objectively evaluate the expected performance and fees of the Plan's investments in comparison to other investment options. Defendants imprudently and disloyally selected and retained investment options in the Plan that benefited SEI but disserved participants, compared to similar options available in the marketplace.

107.    Each of the above-mentioned actions and failures to act described throughout the Complaint demonstrates Defendants' failure to make Plan investment decisions based solely on the merits of each investment and in the interest of Plan participants. These failures were flagrant and intentional. Throughout the Class Period, Defendants' conduct and decisions were driven by their desire to drive revenues and profits to SEI and to promote SEI's business interests. Through these actions and omissions, Defendants failed to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries of the Plan, and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the Plan, in violation of their fiduciary duty of loyalty under 29 U.S.C. § 1104(a)(1)(A).

108.    Each of the above actions and omissions described in this Complaint further demonstrate that Defendants failed to discharge their duties with respect to the Plan with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would have used in the conduct of an enterprise of like character and with like aims, thereby breaching their duties under 29 U.S.C. § 1104(a)(1)(B).

109.    The foregoing fiduciary breaches resulted in millions of dollars in losses to the Plan. Further, SEI profited from these fiduciary breaches by receiving investment management fees they otherwise would not have received as a result of Defendants' imprudent and disloyal retention of underperforming SEI-affiliated funds in the Plan.

110.    Each Defendant is personally liable, and Defendants are jointly and severally liable, under 29 U.S.C. §§ 1109(a), 1132(a)(2), and 1132(a)(3), to make good to the Plan the losses resulting from the aforementioned breaches, to restore to the Plan any profits Defendants made through the use of Plan assets, and to restore to the Plan any profits resulting from the breaches of fiduciary duties alleged in this Count.

111.    Each Defendant knowingly participated in each breach of the other Defendants, knowing that such acts were a breach, enabled the other Defendants to commit breaches by failing to lawfully discharge such Defendant's own duties, and knew of the breaches by the other Defendants and failed to make any reasonable and timely effort under the circumstances to remedy the breaches. Accordingly, each Defendant is also liable for the losses caused by the breaches of its co-fiduciaries under 29 U.S.C. § 1105(a).

## COUNT II
### Failure to Monitor Fiduciaries

112.    Plaintiffs incorporate by reference the allegations contained in the paragraphs above as if set forth fully herein.

113.    Defendants SEIC and the Committee are fiduciaries of the Plan under 29 U.S.C. §§ 1002(21) and/or 1102(a)(1).

114.    Defendant SEIC had (and retains) ultimate authority over the management of the Plan. SEIC appointed members of the Committee. SEIC also received periodic investment

performance reports from the Committee and had the authority to receive periodic reports on other actions of the Committee. SEIC had a fiduciary duty to monitor appointed fiduciaries.

115.    Defendant Committee had authority over any sub-committees and appointed members of those sub-committees. The Committee received periodic reports on sub-committee actions with respect to the Plan. The Committee had a fiduciary duty to monitor appointed fiduciaries.

116.    A monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment and monitoring of plan assets, and must take prompt and effective action to protect the plan and participants when the monitored fiduciaries fail to perform their fiduciary obligations in accordance with ERISA.

117.    SEIC and the Committee breached their fiduciary monitoring duties by, among other things:

    a.  Failing to monitor and evaluate the performance of the Plan's fiduciaries or have a system in place for doing so, standing idly by as the Plan suffered substantial losses as a result of Defendants' imprudent actions and omissions;

    b.  Failing to monitor its appointees' fiduciary processes, which would have alerted a prudent fiduciary to the breaches of fiduciary duties described herein; and

    c.  Failing to remove fiduciaries whose performance was inadequate in that they continued to maintain investments that a prudent fiduciary would not have retained in the Plan, all to the detriment of the Plan and Plan participants' retirement savings.

118.    As a consequence of the foregoing breaches of the duty to monitor, the Plan suffered millions of dollars per year in losses due to investment underperformance.

119.    Pursuant to 29 U.S.C. §§ 1109(a), 1132(a)(2), and 1132(a)(3), SEIC and the Committee are liable to restore to the Plan all losses suffered as a result of the fiduciary breaches that resulted from their failure to properly monitor the Plan's fiduciaries.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and as the representative of the Class defined herein, and on behalf of the Plan, prays for relief as follows.

A.    A determination that this action may proceed as a class action under Rule 23(b)(1) or, in the alternative, Rule 23(b)(3), of the Federal Rules of Civil Procedure;

B.    Designation of Plaintiffs as Class Representatives and designation of Plaintiffs' counsel as Class Counsel;

C.    A declaration that Defendants have breached their fiduciary duties under ERISA;

D.    A declaration that SEIC and the Committee breached their fiduciary duty to monitor appointed fiduciaries;

E.    An order compelling Defendants to personally make good to the Plan all losses that the Plan incurred as a result of the breaches of fiduciary duties described above, and to restore the Plan to the position it would have been in but for this unlawful conduct;

F.    An accounting for profits earned by Defendants and a subsequent order requiring SEI to disgorge all profits received from, or in respect of, the Plan;

G.    Other equitable relief to redress Defendants' illegal practices and to enforce the provisions of ERISA as may be appropriate;

H.    An award of pre-judgment interest;

I.      An award of attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g) and/or the

common fund doctrine; and

J.      An award of such other and further relief as the Court deems equitable and just.


Dated: December 26, 2025

Austin B. Cohen
Charles E. Schaffer
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
acohen@lfsblaw.com
cschaffer@lfsblaw.com

Matthew J. Langley
Christopher M. Nienhaus
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, IL 60614
Tel: (312) 576-3024
matt@almeidalawgroup.com
chris@almeidalawgroup.com

*Counsel for Plaintiffs & the Proposed Class*