**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| David Hall and Jennifer Knapp, *on behalf of themselves and all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>SEI Investments Company, SEI Investments Management Corporation, SEI Capital Accumulation Plan Administration Committee, and John Does 1-30**,**<br><br>Defendants. | Case No. 2:25-cv-07341-JDW |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

INTRODUCTION ..... 1

BACKGROUND ..... 3

I. Procedural History. ..... 3

II. Overview of the Settlement Terms. ..... 4

A. The Settlement Class. ..... 4

B. Monetary Relief. ..... 5

C. Prospective Relief. ..... 6

D. Review by Independent Fiduciary. ..... 6

E. Release of Claims. ..... 7

F. Class Notice and Settlement Administration. ..... 8

G. Attorneys' Fees and Costs. ..... 9

ARGUMENT ..... 10

I. Standard of Review. ..... 10

II. The Settlement Satisfies the Standard for Preliminary Approval. ..... 12

A. The Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel After Discovery. ..... 13

B. The Settlement Provides Fair and Reasonable Relief to Class Members through an Effective Distribution Method and Treats Class Members Equitably. ..... 14

C. Plaintiffs Would Have Faced Potential Litigation Risks and Substantial Delay in the Absence of the Settlement. ..... 16

III. The Class Notice Plan Is Reasonable and Should Be Approved. ..... 18

IV. The Proposed Class Should Be Certified For Settlement Purposes. ..... 19

CONCLUSION ..... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Lockheed Martin Corp.*,
2015 WL 4398475 (S.D. Ill. July 17, 2015) .... 17
*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997).... 20, 21
*Andrus v. N.Y. Life Ins. Co.*,
No. 1:16-cv-05698, ECF No. 84 (S.D.N.Y. June 15, 2017).... 16
*Boley v. Universal Health Servs., Inc.*,
337 F.R.D. 626 (E.D. Pa. 2021), aff'd, 36 F.4th 124 (3d Cir. 2022).... 22
*Curiale v. Lenox Grp., Inc.*,
2008 WL 4899474 (E.D. Pa. Nov. 14, 2008) .... 12
*Furstenau v. AT&T Corp.*,
2004 WL 5582592 (E.D. Pa. Sept. 3, 2004) .... 21
*Gates v. Rohm & Haas Co.*,
248 F.R.D. 434 (E.D. Pa. 2008).... 10
*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975).... 10, 12
*In re Baby Prods. Antitrust Litig.*,
708 F.3d 163 (3d Cir. 2013).... 19
*In re Gen. Motors Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995).... 10
*In re Healthec LLC Data Breach Litig.*,
2025 WL 1603267 (D.N.J. June 6, 2025) .... 18
*In re Ikon Office Sols., Inc., Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000).... 13
*In re Linerboard Antitrust Litig.*,
292 F. Supp. 2d 631 (E.D. Pa. 2003) .... 13
*In re Nat'l Football League Players Concussion Injury Litig.*,
821 F.3d 410 (3d Cir. 2016).... 12
*In re PNC Fin. Servs. Grp., Inc.*,
440 F. Supp. 2d 421 (W.D. Pa. 2006).... 14
*In re Schering Plough Corp. ERISA Litig.*,
589 F.3d 585 (3d Cir. 2009).... 21
*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*,
No. 5:16-cv-03698, ECF No. 149 (N.D. Cal. May 11, 2018).... 16
*Kanawi v. Bechtel Corp.*,
254 F.R.D. 102 (N.D. Cal. 2008).... 22
*Klingensmith v. Max & Erma's Rests., Inc.*,
2007 WL 3118505 (W.D. Pa. Oct. 23, 2007) .... 13
*Krueger v. Ameriprise Fin., Inc.*,

2015 WL 4246879 (D. Minn. July 13, 2015) .................... 17
*Kruger v. Novant Health, Inc.*,
2016 WL 6769066 (M.D.N.C. Sept. 29, 2016).................... 18
*Lachance v. Harrington*,
965 F. Supp. 630 (E.D. Pa. 1997) .................... 14
*Main v. Am. Airlines, Inc.*,
No. 4:16-cv-00473, ECF No. 133 (N.D. Tex. Feb. 7, 2018) .................... 16
*Mehling v. N.Y. Life Ins. Co.*,
246 F.R.D. 467 (E.D. Pa. 2007).................... 16, 20
*Moreno v. Deutsche Bank Ams. Holding Corp.*,
2017 WL 3868803 (S.D.N.Y. Sept. 5, 2017).................... 13
*Moreno v. Deutsche Bank Ams. Holding Corp.*,
No. 1:15-cv-09936, ECF No. 347 (S.D.N.Y. Mar. 1, 2019).................... 16
*Myers v. Jani-King of Phila., Inc.*,
2019 WL 2077719 (E.D. Pa. May 10, 2019) .................... 10
*Nunez v. B. Braun Med., Inc.*,
2023 WL 5339620 (E.D. Pa. Aug. 18, 2023) .................... 16
*Sacerdote v. N.Y. Univ.*,
328 F. Supp. 3d 273 (S.D.N.Y. 2018), aff'd in part, vacated in part, and remanded, 9 F.4th 95 (2d Cir. 2021).................... 17
*Stevens v. SEI Invs. Co.*,
2020 WL 996418 (E.D. Pa. Feb. 26, 2020) .................... 13
*Stewart v. Abraham*,
275 F.3d 220 (3d Cir. 2001).................... 20
*Stoner v. CBA Info. Servs.*,
352 F. Supp. 2d 549 (E.D. Pa. 2005) .................... 16
*Tibble v. Edison Int'l*,
2017 WL 3523737 (C.D. Cal. Aug. 16, 2017).................... 17
*Tussey v. ABB, Inc.*,
2017 WL 6343803 (W.D. Mo. Dec. 12, 2017).................... 17
*Urakhchin v. Allianz Asset Mgmt. of Am., LP*,
No. 8:15-cv-01614, ECF No. 185 (C.D. Cal. July 30, 2018) .................... 16
*Velazquez v. Mass. Fin. Servs. Co.*,
No. 1:17-cv-11249, ECF No. 96 (D. Mass. June 25, 2019).................... 16
*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011).................... 20
*Wildman v. Am. Century Servs., LLC*,
362 F. Supp. 3d 685 (W.D. Mo. 2019) .................... 17

**Statutes**

28 U.S.C. § 1715(d) .................... 19
29 U.S.C. §§ 1001–1461.................... 1
29 U.S.C. § 1002(38) .................... 1, 6, 14

**Rules**

Fed. R. Civ. P. 23 .......... 2
Fed. R. Civ. P. 23(a) .......... 3, 20
Fed. R. Civ. P. 23(b) .......... 20
Fed. R. Civ. P. 23(b)(1) .......... 3, 10, 18, 21
Fed. R. Civ. P. 23(b)(3) .......... 21
Fed. R. Civ. P. 23(c)(2) .......... 18
Fed. R. Civ. P. 23(e) .......... 10, 11
Fed. R. Civ. P. 23(e)(1) .......... 18
Fed. R. Civ. P. 23(e)(1)(B) .......... 11, 12, 18
Fed. R. Civ. P. 23(e)(2) .......... 11, 12
Fed. R. Civ. P. 23(e)(3) .......... 11
Fed. R. Civ. P. 23(g) .......... 21
Fed. R. Civ. P. 23(g)(1)(A) .......... 21

**Other Authorities**

Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632 (Dec. 31, 2003), as amended, 75 Fed. Reg. 33830 (June 15, 2010) .......... 6

## INTRODUCTION

Plaintiffs David Hall and Jennifer Knapp ("Plaintiffs") submit this Memorandum in support of their Motion for Preliminary Approval of Class Action Settlement. A copy of the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") is attached as Exhibit A to the accompanying Declaration of Matthew J. Langley ("*Langley Decl.*").[1] This Settlement resolves Plaintiffs' class action claims against Defendants SEI Investments Company ("SEIC"), SEI Investments Management Corporation ("SIMC"), the SEI Capital Accumulation Plan Administration Committee ("the Committee"), and John Does 1–30 (collectively, "Defendants"), under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, concerning Defendants' administration and management of the SEI Capital Accumulation Plan ("Plan").[2]

Under the terms of the proposed Settlement, Defendants or their insurers will pay a gross settlement amount of $2,750,000.00 into a common fund for the benefit of the Settlement Class Members. This is a reasonable recovery for the Class and falls within the range of negotiated settlements in similar ERISA cases. In addition, the Settlement also provides for prospective relief. To address the issues Plaintiffs raised in the lawsuit, Defendants agreed to conduct a request for proposal, within nine months of the Settlement Effective Date, for an unaffiliated "investment manager" as defined in ERISA § 3(38), 29 U.S.C. § 1002(38), to assume fiduciary authority and discretion with respect to the Plan's investment options (other than the SEI Company Stock Fund and the current brokerage account option), including with the authority and discretion to remove

---

[1] All capitalized terms have the meaning assigned to them in the Settlement Agreement, unless otherwise specified herein.

[2] Defendants dispute the allegations and deny liability for any alleged violations of ERISA or any other law.

any Plan investment options as the investment manager deems prudent. *Settlement Agreement* ¶ *15.1*.

For the reasons set forth below, the Settlement is fair, reasonable, and adequate, and merits preliminary approval so that the proposed Settlement Notices can be sent to the Settlement Class. Among other things supporting preliminary approval:

- The Settlement was negotiated at arm's length by experienced and capable counsel, with the assistance of a well-respected mediator, Robert A. Meyer, Esq.;
- The proposed Settlement Class is consistent with the relevant requirements of Federal Rule of Civil Procedure 23;
- The Settlement provides for fair and reasonable monetary and prospective relief compared to settlements in other cases, as described below;
- The Settlement provides for automatic payments to Current Participants and Beneficiaries or Alternate Payees with Active Accounts, and a simple claim process for Former Participants and Beneficiaries or Alternate Payees without Active Accounts to receive a check or elect an eligible rollover upon supplying adequate information. A person who had an Active Account when the Preliminary Approval Order was entered but closes it before payment will receive a check or eligible rollover without submitting a claim form. *Settlement Agreement Ex. B* ¶¶ *1.6–1.7*;
- The Settlement identifies the Released Claims concerning the Plan and its management during the Class Period, including claims that were asserted or could have been asserted, and the proposed notice describes the scope of the release. *Settlement Agreement* ¶ *2.39* & *Ex. A*;

- The proposed Settlement Notices provide fulsome information to Class Members about the Settlement, and will be distributed via email and, if necessary, via first-class mail; and
- The Settlement Agreement provides Class Members the opportunity to raise any objections they may have to the Settlement and appear at the final approval hearing.

Accordingly, Plaintiffs respectfully request that the Court enter an order: (1) preliminarily approving the Settlement; (2) approving the proposed Settlement Notices and authorizing distribution of the Notices; (3) certifying the proposed Settlement Class for settlement purposes only under Rules 23(a) and 23(b)(1), and preliminarily approving the Plan of Allocation; (4) approving Kroll Settlement Administration LLC as the Settlement Administrator; (5) designating Plaintiffs as Class Representatives; (6) designating Plaintiffs' counsel as Class Counsel; (7) scheduling a final approval hearing; and (8) granting such other relief as set forth in the proposed Preliminary Approval Order submitted herewith. The relief sought in this motion is not opposed by Defendants.

## BACKGROUND

### I. PROCEDURAL HISTORY.

On December 26, 2025, David Hall and Jennifer Knapp, both current participants in the Plan, filed a Class Action Complaint against Defendants, asserting claims for breach of fiduciary duty and failure to monitor fiduciaries under ERISA. *See Dkt. No. 1*. In summary, Plaintiffs alleged that the Plan's fiduciaries retained SEI-affiliated investments in the Plan that a prudent and unbiased fiduciary would not have retained. *See Am. Compl.* ¶¶ *7–11, 56–168* (Dkt. No. 22).

On March 17, 2026, the Court convened a telephone conference during which it directed Plaintiffs to file an amended complaint and set a deadline of May 8, 2026 for Defendants to move

to stay proceedings pending a ruling from the Supreme Court in *Anderson v. Intel Corp. Inv. Pol'y Comm.*, No. 25-498 (U.S.). *See Dkt. No. 20*; *see also Dkt. No. 21* (order directing the same). Plaintiffs filed their amended complaint on April 17, 2026. *See Dkt. No. 22*.

On May 7, 2026, the Parties filed a joint motion to stay proceedings pending private mediation that informed the Court, *inter alia*, that the Parties agreed to mediate this matter before Robert A. Meyer, Esq. on August 5, 2026. *Dkt. No. 23*. On May 7, 2026, the Court granted the Parties joint motion. *Dkt. No. 24*.

Prior to the August 5, 2026 mediation, Defendants produced more than 1,200 pages of documents in response to informal requests by Class Counsel. The Parties also exchanged pre-mediation statements explaining their factual and legal positions in detail.

On August 5, 2026, the Parties conducted a mediation before Robert A. Meyer, Esq. and reached a settlement in principle. The Parties informed the Court of the settlement by joint letter on August 11, 2026.

## II. OVERVIEW OF THE SETTLEMENT TERMS.

### A. The Settlement Class.

The Settlement Agreement applies to the following Settlement Class:

All persons who participated in the Plan at any time during the Class Period, including any Beneficiary of a deceased Person who participated in the Plan at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO who participated in the Plan at any time during the Class Period. Excluded from the Settlement Class are Defendants and their Beneficiaries.

*Settlement Agreement* ¶ *2.47*. The Class Period runs from January 1, 2020 through and including the date on which the Preliminary Approval Order is entered by the Court. *Id.* ¶ *2.13*. Based on information provided by Defendants, there are approximately 8,600 class members.

**B. Monetary Relief.**

Under the Settlement, Defendants or their insurers will contribute a Gross Settlement Amount of $2,750,000 to a common settlement fund (the "Qualified Settlement Fund"). *Settlement Agreement* ¶ *2.27*; *see also id.* ¶ *5.1* (describing the establishment of the Qualified Settlement Fund); *id.* ¶¶ 5.4, 5.5 (describing Defendants' contributions to the Qualified Settlement Fund).

After accounting for any Attorneys' Fees and costs, Case Contribution Awards, Administrative Expenses, and a contingency reserve not to exceed an amount mutually agreed upon by the Settling Parties that is set aside by the Settlement Administrator for Administrative Expenses and an amount estimated for adjustments of data or calculation errors, the Net Settlement Amount will be distributed to eligible Class Members. *Id.* ¶¶ *2.30*, *6.2*; *see also id.* ¶ *2.4* (defining Attorneys' Fees and Costs); ¶ *2.9* (defining Case Contribution Awards). Former Participants and Beneficiaries or Alternate Payees without Active Accounts must submit a completed Former Participant Claim Form that the Settlement Administrator receives within 120 calendar days after entry of the Preliminary Approval Order, subject to the exception in Paragraph 1.6.6 of the Plan of Allocation for persons who close their Active Accounts after preliminary approval. *Id.* ¶ *3.2.5*; *see also id.* ¶ *2.25* (defining Former Participant); *id.* ¶ *2.26* (defining Former Participant Claim Form). Any Net Settlement Amount remaining in the Qualified Settlement Fund after distributions, including costs, taxes, and interest earned on the Qualified Settlement Fund, shall be deposited into the Plan for the purpose of defraying administrative fees and expenses of the Plan that would

otherwise be charged to the Plan's participants. *Id.* ¶ *6.6.* The residual distribution will occur no sooner than 395 calendar days after the Settlement Effective Date. Plan of Allocation ¶ 1.14.

**C. Prospective Relief.**

The Settlement also provides for prospective relief. Specifically, the Settlement Agreement states that Defendants agree to conduct a request for proposal, within nine months of the Settlement Effective Date, for an unaffiliated "investment manager" as defined in ERISA § 3(38), 29 U.S.C. § 1002(38), to assume fiduciary authority and discretion with respect to the Plan's investment options (other than the SEI Company Stock Fund and the current brokerage account option), including with the authority and discretion to remove any Plan investment options as the investment manager deems prudent. *Settlement Agreement* ¶ *15.1.* This prospective relief directly addresses the issues Plaintiffs raised in the lawsuit and further supports approval of the settlement.

**D. Review by Independent Fiduciary.**

Under the Settlement Agreement, Defendants will retain a separate independent fiduciary to review and authorize the settlement (if approved) on behalf of the Plan. *Settlement Agreement* ¶ *3.1*; *see also id.* ¶ *2.28* (defining Independent Fiduciary); Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, *as amended*, 75 Fed. Reg. 33830 ("PTE 2003-39"). The Independent Fiduciary shall comply with all relevant conditions set forth in PTE 2003-39. *Settlement Agreement* ¶ *3.1.1.* At least thirty (30) calendar days before the Fairness Hearing, the Independent Fiduciary will make a determination as to whether it will approve and authorize the Settlement and give a release to all the Released Parties in its capacity as fiduciary of the Plan, for and on behalf of the Plan in accordance with PTE 2003-39. *Id.* ¶ 12.4.

**E. Release of Claims.**

In exchange for the relief provided by the Settlement, the Settlement Class will release the Released Parties from any and all actual or potential claims (including claims for any and all losses, damages, unjust enrichment, attorneys' fees, disgorgement, litigation costs, injunction, declaration, contribution, indemnification, or any other type or nature of legal or equitable relief), actions, demands, rights, obligations, liabilities, expenses, costs, and causes of action, accrued or not, whether arising under federal, state, or local law, whether by statute, contract, or equity, whether brought in an individual or representative capacity, whether accrued or not, whether known or unknown, suspected or unsuspected, foreseen or unforeseen, based in whole or in part on acts or failures to act during the Class Period:

- That were asserted or could have been asserted in the Class Action, or that arise out of, relate to, or are based on any of the allegations, acts, omissions, facts, matters, transactions, or occurrences that were alleged, asserted, or set forth in the Complaint; or
- That arise out of, relate to, or are based on, (a) the overall structure, management, or monitoring of the Plan's investment menu, (b) the selection, monitoring, oversight, retention, fees, expenses, or performance of the Plan's investment options and service providers, (c) fees, costs, or expenses charged to, paid, or reimbursed by the Plan, (d) disclosures or failures to disclose information regarding the Plan's investment options or service providers, (e) the services provided to the Plan or the costs of those services, (f) any alleged breach of the duty of loyalty, care, prudence, diversification, or any other fiduciary duties or prohibited transactions under ERISA, and/or (g) any assertions with respect to any fiduciaries of the Plan (or the selection or monitoring of those fiduciaries) in connection with the foregoing; or

- That would be barred by *res judicata* based on entry of the Final Approval Order; or
- That relate to the direction to calculate, the calculation of, and/or the method or manner of allocation of the Qualified Settlement Fund to the Plan or any Class Member in accordance with the Plan of Allocation; or
- That relate to the approval by the Independent Fiduciary of the Settlement, unless brought against the Independent Fiduciary alone.

*Settlement Agreement* ¶ *2.39*; *see also id.* ¶¶ *8.1–8.4*, *id.* ¶ *2.40* (defining Released Parties).

### F. Class Notice and Settlement Administration.

The Settlement Administrator will cause to be sent to each Class Member identified by the Settlement Administrator a Settlement Notice in the form and manner to be approved by the Court. *Settlement Agreement* ¶ *3.4* & *Ex. A*. The Parties have proposed sending the Settlement Notice by email first and then, if necessary, by first-class mail. *Id.* ¶ *3.2.4*. The Settlement Administrator will also send Former Participants and Beneficiaries or Alternate Payees without Active Accounts the Former Participant Claim Form, as applicable, to allow them to receive benefits of this Settlement. *Id.; see also id.* ¶ *3.2.5*. The Settlement Notices provide information to the Settlement Class regarding, among other things: (1) a summary of the lawsuit; (2) a clear definition of the Settlement Class; (3) a description of the material terms of the Settlement; (4) a disclosure of the release of the claims; (5) instructions for submitting a claim (in the event one is required); (6) instructions as to how to object to the Settlement and a date by which Settlement Class members must object; (7) the date, time, and location of the final approval hearing; (8) contact information for the Settlement Administrator; (9) information regarding Class Counsel and the amount that Class Counsel will seek in Attorneys' Fees and Costs; and (10) the proposed Case Contribution Awards. *Settlement Agreement Ex. A*.

To the extent that Class Members would like more information about the Settlement, the Settlement Administrator will establish a Settlement Website on which it will post the following documents or links to the following documents: the Complaint, Settlement Agreement and its Exhibits, Settlement Notice, Former Participant Claim Form, Plaintiffs' Motion for Attorneys' Fees and Costs and Class Representatives' Case Contribution Awards, any Court orders related to the Settlement, any amendments or revisions to these documents, and any other documents or information mutually agreed upon by the Settling Parties. *Id.* ¶ *14.2*; *see also id.* ¶ *2.50* (defining Settlement Website).

**G. Attorneys' Fees and Costs.**

The Settlement Agreement requires that Class Counsel file a motion for an award of Attorneys' Fees and Costs no later than 45 calendar days before the date of the Fairness Hearing specified in the Preliminary Approval Order. *Settlement Agreement* ¶ *7.2*. Under the Settlement, these fees are subject to Court approval and are capped at no more than 35% of the Gross Settlement Amount ($962,500), plus litigation costs and expenses. *Id.* ¶ *7.1*. The Settlement also provides for Case Contribution Awards of up to $5,000 for each Class Representative, subject to Court approval. *Id.* These requests are paid from the Gross Settlement Amount and remain subject to separate Court review. Sections 6.2.1–6.2.2 provide for payment of approved fees, costs, and Case Contribution Awards after funding of the second installment and no later than fifteen business days following the Settlement Effective Date. Any reduction or denial of these requests does not itself defeat the Settlement. *Id.* ¶ *13.3*.

## ARGUMENT

### I. Standard of Review.

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement that will bind absent class members. "Review of a proposed class action settlement proceeds in two steps: preliminary approval and a subsequent fairness hearing." *Myers v. Jani-King of Phila., Inc., 2019* WL 2077719, at *2 (E.D. Pa. May 10, 2019). "During preliminary review, counsel submit the proposed terms to the court, and the court makes a preliminary fairness finding." *Id.* "A court's decision to preliminarily approve a proposed class action settlement 'is a determination that there are no obvious deficiencies and the settlement falls within the range of reason.'" *Id. (quoting Gates v. Rohm & Haas Co*., 248 F.R.D. 434, 438 (E.D. Pa. 2008)). If the court grants preliminary approval, the court then directs "that notice be provided to all of the potential class members who would be bound by the settlement agreement," allowing them to object to the settlement, and then holds a fairness hearing to make a final determination on whether the settlement is "fair, reasonable, and adequate." *Id. at *2–3.* Because Plaintiffs seek certification under Rule 23(b)(1), Class Members will not have a right to exclude themselves from this Settlement. *Settlement Agreement Ex. A; Proposed Preliminary Approval Order* ¶ *7.*

"The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975). In exercising this discretion, courts are mindful that "[t]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re Gen. Motors Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55* F.3d 768, 784 (3d Cir. 1995). "[A]n initial presumption of fairness [exists] when the court finds that (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the

settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Id.* at 785-86.[3]

Rule 23(e) states that, at the preliminary approval stage, the court must determine whether settlement notices should be distributed to class members by considering whether it "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2) in turn specifies factors the court must ultimately consider at the final approval stage in determining whether a settlement is "fair, reasonable, and adequate":

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

[3] The fourth concern is relevant to the final approval stage, after class notices have been distributed and Class Members are provided an opportunity to object.

As to the final approval stage, the Third Circuit has identified nine factors courts should consider in granting final approval of a settlement under Rule 23(e):

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157; *see also In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 437 (3d Cir. 2016). This Court has stated that it "need not address all of these factors" at the preliminary approval stage, as "the standard for preliminary approval is far less demanding." *Curiale v. Lenox Grp., Inc.*, 2008 WL 4899474, at *9 n.4 (E.D. Pa. Nov. 14, 2008) (citation and internal quotation marks omitted). The present request is governed by Rule 23(e)(1)(B), which requires a finding that the Court will likely be able to approve the proposal under Rule 23(e)(2) and certify the Settlement Class for purposes of judgment.

## II. THE SETTLEMENT SATISFIES THE STANDARD FOR PRELIMINARY APPROVAL.

The settlement in this case was negotiated at arm's length by experienced counsel after sufficient discovery, the Class Representatives adequately represented the Settlement Class, and the relief provided for the Class is fair and equitable to all Settlement Class Members. As such, the Court will be able to approve the proposal under Federal Rule of Civil Procedure 23(e)(2) as well as the Third Circuit's factors and should grant preliminary approval.

### A. The Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel After Discovery.

"A presumption of correctness is said to attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003). That is precisely the situation presented here. Counsel for Plaintiffs and Defendants are knowledgeable and experienced in complex class actions, particularly actions involving allegations of breaches of fiduciary duties under ERISA. *See, e.g.*, *Moreno v. Deutsche Bank Ams. Holding Corp.*, 2017 WL 3868803, at *11 (S.D.N.Y. Sept. 5, 2017); *Langley Decl.* ¶¶ *16-18* & *Ex. B* (outlining qualifications and experience of class counsel).

Further, the Settlement is based on "sufficient information to evaluate the merits of settlement in an informed manner." *In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 190 (E.D. Pa. 2000). The Settlement occurred after Class Counsel conducted a thorough investigation; prepared a detailed Complaint; obtained more than 1,200 pages of documents from Defendants; exchanged fulsome mediation statements with Defendants; and engaged in a full-day mediation with an experienced and well-regarded mediator. *Langley Decl.* ¶ *13***.** These facts are consistent with other early settlements that have been approved in this jurisdiction. *See, e.g.*, *Stevens v. SEI Invs. Co., 2020 WL 996418, at *4 (E.D. Pa. Feb. 26, 2020) (approving* settlement after early mediation where class counsel "conducted a thorough investigation, prepared a detailed complaint, obtained more than 6,800 pages of documents from Defendants, retained and consulted with an expert regarding potential damages suffered by the Plan, exchanged fulsome mediation statements with Defendants, and engaged in a full-day mediation with an experienced and well-regarded mediator"); *Klingensmith v. Max & Erma's Rests., Inc., 2007* WL 3118505, at *4 (W.D. Pa. Oct.

23, 2007) (approving settlement after early mediation because "[a]lthough Plaintiff's factual inquiry was neither exhaustive nor protracted, it was appropriately focused on the question critical to the merits of the case" and the complaint and investigation assured the court that the settlement "was premised on a sound and adequately informed assessment"); *Lachance v. Harrington*, 965 F. Supp. 630, 638 (E.D. Pa. 1997) (approving a settlement reached prior to class certification, noting that the law supports "early resolution of litigation through settlement"); *In re PNC Fin. Servs. Grp., Inc.*, 440 F. Supp. 2d 421, 430 (W.D. Pa. 2006) (stating that negotiation "at arm's length over several months with the assistance of" a respected mediator "in itself significantly dispels any concern of collusion").

### B. The Settlement Provides Fair and Reasonable Relief to Class Members through an Effective Distribution Method and Treats Class Members Equitably.

The product of these serious and informed negotiations was a Settlement that provides relief to the Class of $2.75 million. On a gross per-capita basis, before fees, costs, and other deductions, this is about $320 per Class Member, and it represents approximately 0.3% of Plan assets. *Langley Decl.* ¶ *4.* On both of these measures, the Settlement is reasonable compared to other recent 401(k) settlements. *See Langley Decl.* ¶ *4.*

In addition to monetary compensation, the Settlement also provides for prospective relief. As noted above, the Settlement Agreement provides that Defendants agree to conduct a request for proposal, within nine months of the Settlement Effective Date, for an unaffiliated "investment manager" as defined in ERISA § 3(38), 29 U.S.C. § 1002(38), to assume fiduciary authority and discretion with respect to the Plan's investment options (other than the SEI Company Stock Fund and the current brokerage account option), including with the authority and discretion to remove

any Plan investment options as the investment manager deems prudent. *Settlement Agreement* ¶ *15.1*. This prospective relief directly addresses the issues Plaintiffs raised in the lawsuit and further supports approval of the settlement.

Finally, the Settlement treats all Class Members equitably and will be delivered through an effective method of distribution. Class Counsel has proposed to the Court a Plan of Allocation, which provides for the calculation, allocation, and distribution of the Net Settlement Amount. *See Settlement Agreement Ex. B.* The Plan of Allocation requires the Settlement Administrator to determine a "Settlement Allocation Score" for each Current Participant, Former Participant, Beneficiary, or Alternate Payee by: (i) determining the year-end account balances of each Current Participant and Former Participant during the Class Period, or, if a Beneficiary or Alternate Payee had a separate account in the Plan during the Class Period, by determining the year-end balance of each such Beneficiary or Alternate Payee; and (ii) dividing the sum of each Current Participant's or Former Participant's, or, to the extent applicable, each Beneficiary's or Alternate Payee's, year-end account balances during the Class Period by the total sum of year-end asset amounts in the Plan during the Class Period. *Id.* ¶ *1.5.1*. The Settlement Allocation Score shall be used to calculate the *pro rata* settlement payment to each Current Participant, Former Participant, Beneficiary, or Alternate Payee. *Id*. Class Members with Active Accounts will receive payments into those accounts without submitting a claim form, subject to Paragraph 1.6.6 for accounts closed after preliminary approval. *Id.* ¶ *1.6.1*. Class Members who do not have Active Accounts will have the opportunity to elect a rollover of their settlement payment to an individual retirement account or other eligible employer plan, which they have identified on the Former Participant Claim Form, provided that such a person supplies adequate information to the Settlement Administrator to effect the rollover. *Id.* ¶ *1.7*. Otherwise, the Former Participant (or Beneficiary or Alternate Payee without

an Active Account) will receive their settlement payment directly by check, assuming the timely submission of a Former Participant Claim Form. *Id.* Similar methods of distribution have been approved in other ERISA class action settlements. *See, e.g.*, *Mehling v. N.Y. Life Ins. Co., 246* F.R.D. 467, 478–79 (E.D. Pa. 2007); *Moreno v. Deutsche Bank Ams. Holding Corp., No.* 1:15-cv-09936, ECF No. 347 at 4 (S.D.N.Y. Mar. 1, 2019); *Urakhchin v. Allianz Asset Mgmt. of Am., LP*, No. 8:15-cv-01614, ECF No. 185 at 5 (C.D. Cal. July 30, 2018); *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, No. 5:16-cv-03698, ECF No. 149 at 4 (N.D. Cal. May 11, 2018); *Main v. Am. Airlines, Inc.*, No. 4:16-cv-00473, ECF No. 133 at 8 (N.D. Tex. Feb. 7, 2018); *Andrus v. N.Y. Life Ins. Co.*, No. 1:16-cv-05698, ECF No. 84 (S.D.N.Y. June 15, 2017); *Velazquez v. Mass. Fin. Servs. Co.*, No. 1:17-cv-11249, ECF No. 96 (D. Mass. June 25, 2019) (granting preliminary approval).

### C. Plaintiffs Would Have Faced Potential Litigation Risks and Substantial Delay in the Absence of the Settlement.

In the absence of a Settlement, Plaintiffs would have faced potential litigation risks. *See Stoner v. CBA Info. Servs.*, 352 F. Supp. 2d 549, 552 (E.D. Pa. 2005) ("Absent the settlement, a lengthy and expensive trial and appeal would likely be inevitable, and avoiding these costs benefits all parties."). These risks are objectively illustrated by the recent judgment entered in favor of the defendants following three days of trial in another ERISA case in this Court. *Nunez v. B. Braun Med., Inc.*, 2023 WL 5339620, at *1 (E.D. Pa. Aug. 18, 2023) (determining that the investment committee did not breach its fiduciary duty of prudence).

Although Plaintiffs believe there is strong support for their claims in this case, it is uncertain whether they would have prevailed at trial. Moreover, even if Plaintiffs proved a fiduciary breach, plaintiffs in other cases have encountered difficulty establishing losses. For example, in *Sacerdote v. New York University*, 328 F. Supp. 3d 273, 280 (S.D.N.Y. 2018), the

court found that "while there were deficiencies in the Committee's processes—including that several members displayed a concerning lack of knowledge relevant to the Committee's mandate—plaintiffs have not proven that . . . the Plans suffered losses as a result." *Sacerdote*, 328 F. Supp. 3d at 280, aff'd in part, vacated in part, and remanded, 9 F.4th 95 (2d Cir. 2021). Likewise, the trial court decision in American Century resulted in an adverse ruling on the issue of loss. *See Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685, 710 (W.D. Mo. 2019) (finding that "Plaintiffs failed to prove a loss to the Plan"). Although Plaintiffs believe they would be able to establish damages through expert testimony, these decisions illustrate the risks Plaintiffs would face on the issue of loss.

Aside from these risks, continuing the litigation would have resulted in additional complex and costly proceedings before this Court, which would have significantly delayed any relief to Class members (at best), and might have resulted in no relief at all. It is well-recognized that ERISA 401(k) cases "often lead[] to lengthy litigation." *See Krueger v. Ameriprise Fin., Inc., 2015* WL 4246879, at *1 (D. Minn. July 13, 2015). In fact, it is not unusual for these cases to extend for a decade or longer before final resolution. *See Tussey v. ABB, Inc., 2017* WL 6343803, at *3 (W.D. Mo. Dec. 12, 2017); *Tibble v. Edison Int'l*, 2017 WL 3523737, at *15 (C.D. Cal. Aug. 16, 2017) (outlining remaining issues ten years after suit was filed on August 16, 2007); *Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *4 (S.D. Ill. July 17, 2015) (noting that the case had originally been filed on September 11, 2006).

Even if Plaintiffs had prevailed at trial, and the Court found both a breach and loss, there is a strong likelihood that Defendants would have appealed such findings to the Third Circuit. Given the risks, cost, and delay of further litigation, it was reasonable and appropriate for Plaintiffs to reach a settlement on the terms that were negotiated. *See Kruger v. Novant Health, Inc.*, 2016

WL 6769066, at *5 (M.D.N.C. Sept. 29, 2016) (stating that settlement of a 401(k) class action "benefits the employees and retirees in multiple ways").

## III. THE CLASS NOTICE PLAN IS REASONABLE AND SHOULD BE APPROVED.

In addition to reviewing the substance of the Parties' Settlement Agreement, the Court must ensure that notice is sent in a reasonable manner to all class members who would be bound by the proposed settlement. Fed. R. Civ. P. 23(e)(1). For a class certified under Rule 23(b)(1), Rule 23(c)(2)(A) permits the Court to direct appropriate notice, and Rule 23(e)(1)(B) requires notice in a reasonable manner to all Class Members who would be bound by the proposal. That is precisely the type of notice proposed here.

The Settlement Administrator will provide direct notice of the Settlement to the Settlement Class in the form and manner to be approved by the Court. *Settlement Agreement* ¶ *3.4*. The Preliminary Approval Order presented to the Court proposes that the Settlement Administrator will send—within thirty (30) calendar days after the entry of the Preliminary Approval Order, and by email first and then, if necessary, first-class mail—the Settlement Notice and Former Participant Claim Form (as applicable) to each Class Member identified by the Settlement Administrator based upon the data provided by the Plan's Recordkeeper. This type of notice is presumptively reasonable. *See In re Healthec LLC Data Breach Litig.*, 2025 WL 1603267, at *13 (D.N.J. June 6, 2025) (finding that the proposed notice program, which consisted of initial emails and, if necessary, postcards, satisfied due process and met the requirements of Federal Rules of Civil Procedure 23(c)(2) and 23(e)(1)).

The content of the Settlement Notices is also reasonable. The full Settlement Notice, supplemented by the email and postcard notices and the Settlement Website, includes, among other

things: (1) a summary of the lawsuit; (2) a clear definition of the Settlement Class; (3) a description of the material terms of the Settlement; (4) a disclosure of the release of the claims; (5) instructions for submitting a claim (in the event one is required); (6) instructions as to how to object to the Settlement and a date by which Settlement Class members must object; (7) the date, time, and location of the final approval hearing; (8) contact information for the Settlement Administrator; (9) information regarding Class Counsel and the amount that Class Counsel will seek in Attorneys' Fees and Costs; and (10) the proposed Case Contribution Awards. *Settlement Agreement Ex. A*. The notice materials, taken together, are reasonable because they "contain sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement[.]" *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013). The proposed order requires the fee and final-approval motions to be filed at least 45 calendar days before the Fairness Hearing, before the objection deadline of 30 calendar days before that hearing. *Settlement Agreement Ex. A; Proposed Preliminary Approval Order* ¶¶ *7, 9–11.* The Settlement Administrator will provide CAFA notice within ten calendar days after the preliminary-approval motion is filed, and final approval remains subject to the waiting period in 28 U.S.C. § 1715(d). *Settlement Agreement* ¶ *3.5; Proposed Preliminary Approval Order* ¶ *16.*

## IV. The Proposed Class Should Be Certified For Settlement Purposes.

Finally, the Court will be able to certify the proposed Settlement Class for the purposes of settlement. The proposed Settlement Class includes:

All persons who participated in the Plan at any time during the Class Period, including any Beneficiary of a deceased Person who participated in the Plan at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO who participated in the Plan at any time

during the Class Period. Excluded from the Settlement Class are Defendants and their Beneficiaries.

*Settlement Agreement* ¶ *2.47*. The Class Period runs from January 1, 2020 through and including the date on which the Preliminary Approval Order is entered by the Court. *Id.* ¶ *2.13*. The proposed class must satisfy each of the requirements of Federal Rule of Civil Procedure 23(a) as well as one of the subparts of Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). In the context of settlement, however, the Court need not inquire whether a trial would be manageable on a class-wide basis because "the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Here, the Settlement Class meets the requirements of Rule 23(a) because:

- The Class is numerous. Defendants estimate that the Class contains approximately 8,600 current and former Plan participants. *See Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) (stating that "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met");
- The issues raised in the Complaint—Defendants' status as fiduciaries, whether they breached their fiduciary duties under ERISA, whether the Plan incurred losses resulting from such breach, and the appropriate relief—are common to all Class Members. *See Mehling*, 246 F.R.D. at 475 ("In general, the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries.");
- The Class Representatives' claims are typical of those of other Class Members, as all current and former participants are similarly situated and seeking the same relief based

on plan-wide actions. *See, e.g.*, *Furstenau v. AT&T Corp.*, 2004 WL 5582592, at *3 (E.D. Pa. Sept. 3, 2004) (finding typicality in an ERISA class action where plaintiff would need to establish common issue of whether defendants breached their fiduciary duties); and

- Plaintiffs and Class Counsel have adequately represented the Class, as described above. *See Langley Decl.* ¶¶ *11-15.* Both Plaintiffs allege that they held accounts invested in the challenged SEI options and seek relief for the Plan from the same alleged fiduciary conduct. *Am. Compl.* ¶¶ *15–16.* Their requested Plan recovery and prospective investment oversight align with the interests of the Settlement Class. Class Counsel seek appointment under Rule 23(g) based on their investigation and prosecution of the claims, experience in ERISA and class litigation, knowledge of the applicable law, and commitment of resources. Fed. R. Civ. P. 23(g)(1)(A).

Likewise, class certification is appropriate under Federal Rule of Civil Procedure 23(b)(1) due to the risk that separate actions would be dispositive of the interests of other participants not parties to those separate actions or substantially impair other participants' ability to protect their own interests.[4] *See, e.g.*, *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009) ("In light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class[.]"); *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111 (N.D. Cal. 2008);

---

[4] Plaintiffs only address class certification under Rule 23(b)(1) because it is clear that certification is proper under Rule 23(b)(1), and Rule 23(b)(3) is intended to address "situations in which class action treatment is not as clearly called for as it is in Rule 23(b)(1)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997).

*Boley v. Universal Health Servs., Inc.*, 337 F.R.D. 626, 637 (E.D. Pa. 2021), *aff'd*, 36 F.4th 124 (3d Cir. 2022).

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court preliminarily approve the Settlement and enter the accompanying Preliminary Approval Order.

Dated: October 30, 2026

*/s/ Matthew J. Langley*

Matthew J. Langley
Christopher M. Nienhaus
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, IL 60614
Tel: (773) 554-9354
matt@almeidalawgroup.com
chris@almeidalawgroup.com

Austin B. Cohen
Charles E. Schaffer
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
acohen@lfsblaw.com
cschaffer@lfsblaw.com

*Counsel for Plaintiffs & the Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2026, a true and correct copy of Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement was served by CM/ECF to the Parties registered to the Court's CM/ECF system.

Dated: October 30, 2026

*/s/ Matthew J. Langley*
Matthew J. Langley