# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| David Hall and Jennifer Knapp, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SEI Investments Company, SEI Investments Management Corporation, SEI Capital Accumulation Plan Administration Committee, and John Does 1-30,<br><br>Defendants. | Case No. 2:25-cv-07341-JDW |

**<u>CLASS ACTION SETTLEMENT AGREEMENT</u>**

This Class Action Settlement Agreement (the "Settlement Agreement") is entered into between and among the Class Representatives, all Class Members, and Defendants.

NOW, THEREFORE, without any admission or concession on the part of the Class Representatives of any lack of merit of the Class Action whatsoever, and without any admission or concession on the part of Defendants as to the merits of the allegations or claims asserted in the Class Action, it is hereby STIPULATED AND AGREED, by and among the Settling Parties to this Settlement Agreement, through their respective attorneys, subject to approval of the Court pursuant to Federal Rule of Civil Procedure 23(e), in consideration of the benefits flowing to the Settling Parties hereto from the Settlement Agreement, that all Released Claims as against the Released Parties shall be compromised, settled, released, and dismissed with prejudice, upon and subject to the following terms and conditions:

## 1. ARTICLE 1 – RECITALS

1.1. On December 26, 2025, Plaintiffs David Hall and Jennifer Knapp, filed a Class Action Complaint (ECF No. 1) in the United States District Court for the Eastern District of Pennsylvania, asserting claims under the Employee Retirement Income Security Act ("ERISA"), in relation to the management of the SEI Capital Accumulation Plan (the "Plan").

1.2. Following a telephone conference with the Court on March 25, 2026, Plaintiffs filed an Amended Complaint on April 17, 2026 (ECF No. 22).

1.3. On May 7, 2026, the Court granted the Parties' request to stay the case pending a private mediation scheduled for August 5, 2026. (ECF No. 24).

1.4. In preparation for mediation, Defendants produced more than 1,200 pages of documents in response to informal requests by Class Counsel. The Parties also exchanged pre-mediation statements explaining their factual and legal positions in detail.

1.5. On August 5, 2026, the Parties engaged in mediation with a neutral mediator, Robert A. Meyer, Esq., and agreed to a settlement in principle. The Parties now memorialize the terms of the Settlement in this Settlement Agreement.

## 2. ARTICLE 2 – DEFINITIONS

As used in this Settlement Agreement and the Exhibits hereto, unless otherwise defined, the following terms have the meanings specified below:

2.1. "**Active Account**" means an individual investment account in the Plan with a balance greater than $0.00.

2.2. "**Administrative Expenses**" means expenses incurred in the administration of this Settlement Agreement, including (a) all fees, expenses, and costs associated with providing the Settlement Notice to the Class Members (including but not limited to the fees of the Plan's Recordkeeper to identify the names and mailing addresses and/or otherwise provide information to the Settlement Administrator); (b) related tax expenses (including taxes and tax expenses as described in Section 5.3); (c) all expenses and costs associated with the distribution of funds under the Plan of Allocation (including but not limited to fees of the Plan's Recordkeeper associated with implementing this Settlement Agreement, facilitating the distribution of funds under the Plan of Allocation, and gathering the data necessary to prepare the Plan of Allocation); (d) all fees and expenses of the Settlement Administrator and Escrow Agent; (e) all fees and expenses of the Independent Fiduciary; and (f) all fees, expenses, and costs associated with providing CAFA Notices. Excluded from Administrative Expenses are the Settling Parties' respective legal fees and expenses. Administrative Expenses shall be paid from the Gross Settlement Amount.

2.3. "**Alternate Payee**" means a Person other than a Current Participant, Former Participant, or Beneficiary in the Plan who is entitled to a benefit under the Plan as a result of a Qualified Domestic Relations Order ("QDRO").

2.4. "**Attorneys' Fees and Costs**" means the amount awarded by the Court as compensation for the services provided by Class Counsel. The amount of attorneys' fees for Class Counsel shall be recovered from the Gross Settlement Amount. Class Counsel also will seek reimbursement for all litigation costs and expenses advanced

and carried by Class Counsel for the duration of this Class Action, including the pre-litigation investigation period, which also shall be recovered from the Gross Settlement Amount.

2.5. "**Authorized Administrator**" means any entity, other than the Recordkeeper, with appropriate administrative authority under the Plan.

2.6. "**Beneficiary**" means any individual, trust, estate, or other recipient entitled to receive a benefit under the Plan that is derivative of a deceased Current Participant's or Former Participant's interest in the Plan, other than an Alternate Payee.

2.7. "**CAFA**" means the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711-1715.

2.8. "**CAFA Notice**" means notice of this proposed Settlement to the appropriate federal and state officials pursuant to CAFA, to be issued by the Settlement Administrator.

2.9. "**Case Contribution Awards**" means the monetary amount awarded by the Court to each Class Representative in recognition of the Class Representative's assistance in the prosecution of this Class Action, for which Class Counsel may seek an amount not exceeding $5,000.00 per Class Representative payable from the Gross Settlement Amount. Any such Case Contribution Award shall be subject to the approval of the Court.

2.10. "**Class Action**" means *Hall, et al. v. SEI Investments Company, et al.*, No. 2:25-cv-07341-JDW, in the U.S. District Court for the Eastern District of Pennsylvania.

2.11. "**Class Counsel**" means Almeida Law Group LLC and Levin Sedran & Berman LLP.

2.12. "**Class Members**" means all individuals in the Settlement Class, including the Class Representatives.

2.13. "**Class Period**" means the period from January 1, 2020, through the date on which the Preliminary Approval Order is entered by the Court.

2.14. "**Class Representatives**" means David Hall and Jennifer Knapp.

2.15. "**Complaint**" means the Amended Complaint filed on April 17, 2026 (ECF No. 22).

2.16. "**Court**" means the U.S. District Court for the Eastern District of Pennsylvania.

2.17. "**Current Participant**" means a member of the Settlement Class who has an Active Account in the Plan as of the date of entry of the Preliminary Approval Order.

2.18. "**Defendants**" means all defendants named in the Complaint, including SEI Investments Company, SEI Investments Management Corporation, and the SEI Capital Accumulation Plan Administration Committee.

2.19. "**Defense Counsel**" means Morgan, Lewis & Bockius LLP.

2.20. "**Escrow Agent**" means the entity approved by the Settling Parties to act as escrow agent for any portion of the Gross Settlement Amount deposited in or accruing in the Qualified Settlement Fund pursuant to this Agreement.

2.21. "**ERISA**" means the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001-1461.

2.22. "**Fairness Hearing**" means the hearing scheduled by the Court to consider (a) any objections by Class Members to the Settlement; (b) Class Counsel's request for Attorneys' Fees and Costs, Administrative Expenses, and Class Representative Case Contribution Awards; and (c) whether to finally approve the Settlement under Rule 23(e) of the Federal Rules of Civil Procedure. The Fairness Hearing may be conducted telephonically or by videoconference.

2.23. "**Final**" means, with respect to any judicial ruling, order, or judgment, that the period for any motions for reconsideration, motions for rehearing, appeals, petitions for certiorari, or the like ("Review Proceeding") has expired without the initiation of a Review Proceeding, or, if a Review Proceeding has been timely initiated, that it has been fully and finally resolved, either by court action or by voluntary action of any party, without any possibility of a reversal, vacatur, or modification of any judicial ruling, order, or judgment, including the exhaustion of all proceedings in any remand or subsequent appeal and remand. The Settling Parties agree that absent an appeal or other attempted Review Proceeding, the period after which the Final Approval Order becomes Final is thirty-five (35) calendar days after its entry by the Court.

2.24. "**Final Approval Order**" means the entry of the order and final judgment approving the Settlement Agreement, implementing the terms of this Settlement Agreement, and dismissing the Class Action with prejudice, to be proposed by the Settling Parties for approval by the Court.

2.25. "**Former Participant**" means a member of the Settlement Class who does not have an Active Account in the Plan as of the date of entry of the Preliminary Approval Order.

2.26. "**Former Participant Claim Form**" shall mean the form to be provided to Former Participants and returned to the Settlement Administrator by Former Participants and Beneficiaries, substantially in the form set forth in Exhibit A-1.

2.27. "**Gross Settlement Amount**" means the sum of two million, seven hundred fifty thousand dollars ($2,750,000.00), contributed to the Qualified Settlement Fund in

accordance with Article 5. Defendants shall pay this amount or cause this amount to be paid directly by their fiduciary liability insurer(s). The Gross Settlement Amount shall be the full and sole monetary payment to the Settlement Class, Class Representatives, and Class Counsel made by or on behalf of Defendants in connection with the Settlement effectuated through this Settlement Agreement. Neither Defendants nor their insurer(s) will make any additional payment in connection with the Settlement of the Class Action.

2.28. "**Independent Fiduciary**" means the independent fiduciary retained to approve the Settlement on behalf of the Plan, which has no relationship to any of the Settling Parties and will serve as an independent fiduciary to the Plan to approve and authorize the settlement of Released Claims on behalf of the Plan in accordance with Section 3.1. Defendants will select the Independent Fiduciary and agree to notify Class Counsel of its selection at least seven (7) days before formally engaging the party selected as Independent Fiduciary.

2.29. "**Mediator**" means Robert A. Meyer, Esq.

2.30. "**Net Settlement Amount**" means the Gross Settlement Amount minus (a) all Attorneys' Fees and Costs paid to Class Counsel as authorized by the Court; (b) all Case Contribution Awards as authorized by the Court; (c) all Administrative Expenses; and (d) a contingency reserve not to exceed an amount mutually agreed upon by the Settling Parties that is set aside by the Settlement Administrator for (1) Administrative Expenses incurred before the Settlement Effective Date but not yet paid, (2) Administrative Expenses estimated to be incurred after the Settlement

Effective Date, and (3) an amount estimated for adjustments of data or calculation errors.

2.31. "**Person**" means an individual, partnership, corporation, governmental entity, or any other form of entity or organization.

2.32. "**Plaintiffs**" means the Class Representatives.

2.33. "**Plan**" means the SEI Capital Accumulation Plan.

2.34. "**Plan of Allocation**" means the method of allocating settlement funds to Class Members. A proposed form of the Plan of Allocation is attached as Exhibit B.

2.35. "**Preliminary Approval Order**" means the order of the Court in substantially the form attached as Exhibit C, whereby the Court preliminarily approves this Settlement.

2.36. "**QDRO**" means a Qualified Domestic Relations Order within the meaning of 26 U.S.C. § 414(p).

2.37. "**Qualified Settlement Fund**" means the interest-bearing settlement fund account to be established and maintained by the Escrow Agent in accordance with Article 5 herein and referred to as the Qualified Settlement Fund (within the meaning of Treas. Reg. § 1.468B-1).

2.38. "**Recordkeeper**" means the entity that maintains electronic records of the Plan's participants and their individual accounts.

2.39. "**Released Claims**" means any and all actual or potential claims (including claims for any and all losses, damages, unjust enrichment, attorneys' fees, disgorgement, litigation costs, injunction, declaration, contribution, indemnification, or any other type or nature of legal or equitable relief), actions, demands, rights, obligations,

liabilities, expenses, costs, and causes of action, accrued or not, whether arising under federal, state, or local law, whether by statute, contract, or equity, whether brought in an individual or representative capacity, whether accrued or not, whether known or unknown, suspected or unsuspected, foreseen or unforeseen, based in whole or in part on acts or failures to act during the Class Period:

2.39.1. That were asserted or could have been asserted in the Class Action, or that arise out of, relate to, or are based on any of the allegations, acts, omissions, facts, matters, transactions, or occurrences that were alleged, asserted, or set forth in the Complaint; or

2.39.2. That arise out of, relate to, or are based on, (a) the overall structure, management, or monitoring of the Plan's investment menu, (b) the selection, monitoring, oversight, retention, fees, expenses, or performance of the Plan's investment options and service providers, (c) fees, costs, or expenses charged to, paid, or reimbursed by the Plan, (d) disclosures or failures to disclose information regarding the Plan's investment options or service providers, (e) the services provided to the Plan or the costs of those services, (f) any alleged breach of the duty of loyalty, care, prudence, diversification, or any other fiduciary duties or prohibited transactions under ERISA, and/or (g) any assertions with respect to any fiduciaries of the Plan (or the selection or monitoring of those fiduciaries) in connection with the foregoing; or

2.39.3. That would be barred by *res judicata* based on entry of the Final Approval Order; or

2.39.4. That relate to the direction to calculate, the calculation of, and/or the method or manner of allocation of the Qualified Settlement Fund to the Plan or any Class Member in accordance with the Plan of Allocation; or

2.39.5. That relate to the approval by the Independent Fiduciary of the Settlement, unless brought against the Independent Fiduciary alone.

2.39.6. The Class Representatives, Class Members, and the Plan expressly waive and relinquish, to the fullest extent permitted by law, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which provides that a "general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party," and any similar state, federal or other law, rule or regulation or principle of common law of any domestic governmental entity.

2.40. "**Released Parties**" means (a) Defendants; (b) Defendants' insurers, co-insurers, and reinsurers; (c) Defendants' direct and indirect past, present, and future affiliates, parents, subsidiaries, divisions, joint ventures, predecessors, successors, Successors-In-Interest, assigns, boards of trustees, boards of directors, officers, trustees, directors, partners, agents, managers, members, employees, or heirs (including any individuals who serve or served in any of the foregoing capacities, such as members of the boards of trustees or boards of directors that are associated with any of Defendants' past, present, and future affiliates), and each Person that controls, is controlled by, or is under common control with them; (d) the Plan and

the Plan's current and past fiduciaries, committees, subcommittees, administrators, plan administrators, recordkeepers, service providers, consultants, attorneys, agents, insurers, and parties-in-interest; and (e) Defendants' independent contractors, representatives, attorneys, administrators, insurers, fiduciaries, accountants, auditors, advisors, consultants, personal representatives, spouses, heirs, executors, administrators, associates, employee benefit plan fiduciaries (with the exception of the Independent Fiduciary), employee benefit plan administrators, employee benefit plan committees and subcommittees, service providers to the Plan (including their owners and employees), members of their immediate families, consultants, subcontractors, and all persons acting under, by, through, or in concert with any of them.

2.41. "**Representatives**" shall mean representatives, attorneys, agents, directors, officers, or employees.

2.42. "**Review Proceeding**" shall have the meaning set forth in Section 2.23.

2.43. "**Settlement**" means the settlement to be consummated under this Settlement Agreement and its exhibits, including any modifications or amendments adopted pursuant to Section 16.13.

2.44. "**Settlement Administrator**" means Kroll Settlement Administration LLC, the entity selected and retained by Class Counsel and subject to approval by Defense Counsel. The Settlement Administrator shall be responsible for administering the Settlement and Plan of Allocation, including preparing and disseminating the CAFA Notices, sending the Settlement Notices to the Class Members, and

establishing the Settlement Website and telephone support line, among other responsibilities.

2.45. "**Settlement Agreement**" means this agreement embodying the terms of the Settlement, including any modifications or amendments hereto.

2.46. "**Settlement Agreement Execution Date**" means the date on which the final signature is applied to this Settlement Agreement.

2.47. "**Settlement Class**" means all persons who participated in the Plan at any time during the Class Period, including any Beneficiary of a deceased Person who participated in the Plan at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO who participated in the Plan at any time during the Class Period. Excluded from the Settlement Class are Defendants and their Beneficiaries.

2.48. "**Settlement Effective Date**" means the date on which the Final Approval Order is Final, provided that by such date the Settlement has not been terminated in accordance with Article 13.

2.49. "**Settlement Notice**" means the Notice of Class Action Settlement and Fairness Hearing to be sent to Class Members identified by the Settlement Administrator following the Court's issuance of the Preliminary Approval Order, in substantially the form attached hereto as Exhibit A. The Settlement Notice shall inform Class Members of a Fairness Hearing to be held with the Court, on a date to be determined by the Court, at which any Class Member satisfying the conditions set forth in the Preliminary Approval Order and the Settlement Notice may be heard regarding (a) the terms of the Settlement Agreement; (b) the petition of Class Counsel for an

award of Attorneys' Fees and Costs; (c) payment of and reserve for Administrative Expenses; and (d) Class Representatives' Case Contribution Awards.

2.50. "**Settlement Website**" means the internet website established in accordance with Section 14.2.

2.51. "**Settling Parties**" means the Defendants and the Class Representatives, on behalf of themselves, the Plan, and each of the Class Members.

2.52. "**Successor-In-Interest**" shall mean a Person or Person's estate, legal representatives, heirs, successors, or assigns, including successors or assigns that result from corporate mergers or other structural changes.

2.53. "**Transferor**" means SEI Investments Company as the "transferor" within the meaning of Treas. Reg. § 1.468B-1(d)(1).

## 3. ARTICLE 3 – REVIEW AND APPROVAL BY INDEPENDENT FIDUCIARY, PRELIMINARY SETTLEMENT APPROVAL, AND NOTICE TO THE CLASS

3.1. Independent Fiduciary. The Independent Fiduciary, retained by Defendants on behalf of the Plan, shall have the following responsibilities, including determining whether to approve and authorize the settlement of Released Claims on behalf of the Plan.

3.1.1. The Independent Fiduciary shall comply with all relevant conditions set forth in Prohibited Transaction Class Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with Litigation," issued December 31, 2003, by the United States Department of Labor, 68 Fed. Reg. 75,632, as amended ("PTE 2003-39"), in making its determination.

3.1.2. The Independent Fiduciary shall notify Defendants directly of its determination, in writing (with copies to Class Counsel and Defense

Counsel), which notification shall be delivered no later than thirty (30) calendar days before the Fairness Hearing.

3.1.3. All fees and expenses associated with the Independent Fiduciary's determination and performance of its other obligations in connection with the Settlement, will constitute Administrative Expenses to be paid by and deducted from the Gross Settlement Amount.

3.1.4. Defendants, Defense Counsel, and Class Counsel shall respond to reasonable requests by the Independent Fiduciary for information so the Independent Fiduciary can review and evaluate the Settlement Agreement.

3.1.5. If Defendants conclude that the Independent Fiduciary's determination does not comply with PTE 2003-39 or is otherwise deficient, Defendants shall so inform the Independent Fiduciary within twenty-one (21) calendar days of receipt of the determination and provide notice to Class Counsel and provide an opportunity to meet and confer.

3.1.6. A copy of the Independent Fiduciary determination letter and report shall be provided to Class Counsel, who may file it with the Court in support of final approval of the Settlement.

3.2. Preliminary Approval. As soon as reasonably possible upon the full execution of this Settlement Agreement by the Settling Parties, the Class Representatives, through Class Counsel, shall file with the Court motions seeking preliminary approval of this Settlement Agreement and for entry of the Preliminary Approval Order in substantially the form attached hereto as Exhibit C. Class Counsel shall provide drafts to Defense Counsel at least five days in advance of filing for their

review. The Preliminary Approval Order to be presented to the Court shall, among other things:

3.2.1. Grant the motion to certify the Settlement Class for settlement purposes only under Fed. R. Civ. P. 23(b)(1);

3.2.2. Approve the text of the Settlement Notice for mailing or sending by electronic means to Class Members;

3.2.3. Determine that under Fed. R. Civ. P. 23(c)(2), the Settlement Notice constitutes the best notice practicable under the circumstances, provides due and sufficient notice of the Fairness Hearing and of the rights of all Class Members, and complies fully with the requirements of Fed. R. Civ. P. 23, the Constitution of the United States, and any other applicable law;

3.2.4. Cause the Settlement Administrator to send—within thirty (30) calendar days after the entry of the Preliminary Approval Order, and by email first and then, if necessary, first-class mail—the Settlement Notice and Former Participant Claim Form (as applicable) to each Class Member identified by the Settlement Administrator based upon the data provided by the Plan's Recordkeeper;

3.2.5. Provide that the Former Participant Claim Form must be returned to the Settlement Administrator within one hundred and twenty (120) calendar days of entry of the Preliminary Approval by all Former Participants, and Beneficiaries or Alternate Payees who do not have Active Accounts as of the date of entry of the Preliminary Approval Order, who wish to receive the benefits of this Settlement;

3.2.6. Provide that, pending final determination of whether the Settlement Agreement should be approved, no Class Member may directly, through Representatives, or in any other capacity, commence any action or proceeding in any court or tribunal asserting any of the Released Claims against Defendants, the Released Parties, and/or the Plan;

3.2.7. Set the Fairness Hearing for no sooner than one hundred forty (140) calendar days after the date the motion for entry of the Preliminary Approval Order is filed, in order to determine whether (a) the Court should approve the Settlement as fair, reasonable, and adequate; (b) the Court should enter the Final Approval Order; and (c) the Court should approve the application for Attorneys' Fees and Costs, Class Representatives' Case Contribution Awards, Administrative Expenses incurred to date, and a reserve for anticipated future Administrative Expenses;

3.2.8. Provide that any objections to any aspect of the Settlement Agreement shall be heard, and any papers submitted in support of said objections shall be considered, by the Court at the Fairness Hearing if they have been filed validly with the Clerk of the Court and copies provided to Class Counsel and Defense Counsel. To be filed validly, the objection and any supporting documents, must be filed or postmarked at least thirty (30) calendar days prior to the scheduled Fairness Hearing. Any Person wishing to speak at the Fairness Hearing shall file and serve a notice of intent to participate at least fifteen (15) calendar days before the Fairness Hearing;

3.2.9. Provide that any party may file a response to an objection by a Class Member at least seven (7) calendar days before the Fairness Hearing;

3.2.10. Provide that the Fairness Hearing may, without further direct notice to the Class Members, other than by notice to Class Counsel, be adjourned or continued by order of the Court; and

3.2.11. Approve the form of the CAFA Notice and order that upon the Settlement Administrator's mailing of the CAFA Notices, Defendants shall have fulfilled their obligations under CAFA.

3.3. Settlement Administrator. Defendants and Defense Counsel shall respond timely to reasonable written requests, including by e-mail, from the Settlement Administrator for readily accessible data that is reasonably necessary to determine the feasibility of administering the Plan of Allocation or to implement the Plan of Allocation. Defendants and Defense Counsel shall use reasonable efforts to produce such data or other information to the Settlement Administrator within thirty days of the request. The actual and reasonable expenses of any third party, including the Plan's Recordkeeper, that are necessary to perform such work shall be Administrative Expenses to be deducted from the Gross Settlement Amount.

3.3.1. The Settlement Administrator must agree to be bound by any non-disclosure or security protocol required by the Settling Parties.

3.3.2. The Settlement Administrator shall use the data provided by Defendants and the Plan's Recordkeeper solely and for no other purpose than meeting its obligations as Settlement Administrator.

3.3.3. At the request of the Settling Parties, the Settlement Administrator shall provide a written protocol addressing how the Settlement Administrator will maintain and store information provided to it to ensure that reasonable and necessary precautions are taken to safeguard the privacy and security of such information.

3.4. Settlement Notice. By the date and in the manner set by the Court in the Preliminary Approval Order, and unless otherwise set forth below, the Settlement Administrator shall cause to be sent to each Class Member identified by the Settlement Administrator a Settlement Notice in the form and manner to be approved by the Court, which shall be in substantially the form attached hereto as Exhibit A or a form subsequently agreed to by the Settling Parties and approved by the Court. The Settlement Administrator shall use commercially reasonable efforts to locate any Class Member whose Settlement Notice is returned and re-send such documents one additional time.

3.5. CAFA Notice. The Settlement Administrator shall, within ten (10) calendar days of the filing of the motion for preliminary approval of the Settlement, have prepared and provided CAFA Notices to the Attorney General of the United States, the Secretary of the Department of Labor, and the Attorneys General of all states in which Class Members reside, as specified by 28 U.S.C. § 1715. The Settlement Administrator shall provide the Settling Parties with notice in writing upon completion of the provision of the CAFA Notices to the above-referenced persons.

## 4. ARTICLE 4 – FINAL SETTLEMENT APPROVAL

4.1. No later than forty-five (45) calendar days before the Fairness Hearing, Class Counsel shall submit to the Court a motion for entry of the Final Approval Order in the form approved by Class Counsel and Defense Counsel, which shall request approval by the Court of the terms of this Settlement Agreement and entry of the Final Approval Order in accordance with this Settlement Agreement. The Final Approval Order as proposed by the Settling Parties shall provide for the following, among other things, as is necessary to carry out the Settlement consistent with applicable law and the Plan's governing documents:

4.1.1. Approval of the Settlement of the release of the Released Claims covered by this Settlement Agreement adjudging the terms of the Settlement Agreement to be fair, reasonable, and adequate to the Plan and the Class Members and directing the Settling Parties to take the necessary steps to effectuate the terms of the Settlement Agreement;

4.1.2. A determination under Fed. R. Civ. P. 23(c)(2) that the Settlement Notice constitutes the best notice practicable under the circumstances and that due and sufficient notice of the Fairness Hearing and the rights of all Class Members has been provided;

4.1.3. Dismissal with prejudice of the Class Action and all Released Claims asserted therein whether asserted by Class Representatives on their own behalf or on behalf of the Class Members, or on behalf of the Plan, without costs to any of the Settling Parties other than as provided for in this Settlement Agreement;

4.1.4. That the Plan and each Class Member (and their respective heirs, beneficiaries, executors, administrators, estates, past and present partners, officers, directors, agents, attorneys, predecessors, successors, and assigns) shall be: (a) conclusively deemed to have, and by operation of the Final Approval Order shall have, fully, finally, and forever settled, released, relinquished, waived, and discharged the Released Parties from all Released Claims; and (b) barred and enjoined from suing the Released Parties in any action or proceeding alleging any of the Released Claims.

4.1.5. That each Class Member shall release the Released Parties, Defense Counsel, and Class Counsel for any claims, liabilities, and attorneys' fees and expenses arising from the allocation of the Gross Settlement Amount or Net Settlement Amount and for all tax liability and associated penalties and interest as well as related attorneys' fees and expenses;

4.1.6. That the provisions of Sections 4.1.4 and 4.1.5 shall apply even if any Class Member may thereafter discover facts in addition to or different from those which the Class Members or Class Counsel now know or believe to be true with respect to the Class Action and the Released Claims, whether or not such Class Members receive a monetary benefit from the Settlement, whether or not such Class Members actually received the Settlement Notice, whether or not such Class Members have filed an objection to the Settlement or to any application by Class Counsel for an award of Attorneys' Fees and Costs, and whether or not the objections or claims for distribution of such Class Members have been approved or allowed;

4.1.7. That all applicable CAFA requirements have been satisfied;

4.1.8. That the Settlement Administrator shall have final authority to determine the share of the Net Settlement Amount to be allocated to each Class Member in accordance with the Plan of Allocation approved by the Court;

4.1.9. That, with respect to any matters that arise concerning the implementation of distributions to Class Members who are current participants in the Plan (after allocation decisions have been made by the Settlement Administrator in its sole discretion), all questions not resolved by the Settlement Agreement shall be resolved by the Plan's administrator or other fiduciaries of the Plan, in accordance with applicable law and the governing terms of the Plan; and

4.1.10. That within twenty-one (21) calendar days following the issuance of all settlement payments to Class Members as provided by the Plan of Allocation approved by the Court, the Settlement Administrator shall prepare and provide to Class Counsel and Defense Counsel a list of each Person who received a settlement payment or contribution from the Qualified Settlement Fund and the amount of such payment or contribution.

4.2. The Final Approval Order and judgment entered by the Court approving the Settlement Agreement shall provide that upon its entry, all Settling Parties, the Settlement Class and the Plan shall be bound by the Settlement Agreement and the Final Approval Order.

## 5. ARTICLE 5 – ESTABLISHMENT OF QUALIFIED SETTLEMENT FUND

5.1. No later than ten (10) calendar days after the Preliminary Approval Order is issued, the Settlement Administrator shall establish the Qualified Settlement Fund with the Escrow Agent. The Settling Parties agree that the Qualified Settlement Fund is intended to be, and will be, an interest-bearing "qualified settlement fund" within the meaning of Section 468B of the Code and Treas. Reg. § 1.468B-1. In addition, the Settlement Administrator shall timely make such elections as necessary or advisable to carry out the provisions of this Section 5.1. If applicable, the Settlement Administrator (as the "administrator" pursuant to Section 5.2) and the Transferor shall fully cooperate in filing the "relation-back election" (as defined in Treas. Reg. § 1.468B-1(j)(2)) to treat the Qualified Settlement Fund as coming into existence as a "qualified settlement fund" within the meaning of Section 468B of the Code and Treas. Reg. § 1.468B-1 as of the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Settlement Administrator to prepare and deliver, in a timely and proper manner, the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to be timely made.

5.2. The "administrator" within the meaning of Treas. Reg. § 1.468B-2(k)(3) shall be the Settlement Administrator. The Settlement Administrator shall timely and properly cause to be filed on behalf of the Qualified Settlement Fund all informational and other tax returns required to be filed in accordance with Treas. Reg. §§ 1.468B-2(k) and -2(l) with respect to the Gross Settlement Amount

(including, without limitation, applying for a taxpayer identification number for the Qualified Settlement Fund pursuant to Internal Revenue Service Form SS-4 and in accordance with Treas. Reg. § 1.468B-2(k)(4)). Such returns as well as any election described in Section 5.1 shall be consistent with this Article 5 and, in all events, shall reflect that all taxes (including any estimated taxes, interest, or penalties) on the income earned by the Qualified Settlement Fund shall be deducted and paid from the Gross Settlement Amount as provided in Section 5.3.

5.3. Taxes and tax expenses are Administrative Expenses to be deducted and paid from the Gross Settlement Amount, including but not limited to: (a) all taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Qualified Settlement Fund, including any taxes that may be imposed upon Defendants or Defense Counsel with respect to any income earned by the Qualified Settlement Fund for any period during which the Qualified Settlement Fund does not qualify as a "qualified settlement fund" within the meaning of Section 468B of the Code and Treas. Reg. § 1.468B-1; and (b) all tax expenses and costs incurred in connection with the operation and implementation of this Article 5 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Article 5). Such taxes and tax expenses shall be Administrative Expenses and shall be paid timely by the Settlement Administrator out of the Gross Settlement Amount without prior order from the Court. The Settlement Administrator shall ensure compliance with withholding and reporting requirements in accordance with Treas. Reg. § 1.468B-2(l) and shall be obligated

(notwithstanding anything herein to the contrary) to withhold from distribution to any Class Member any funds necessary to pay such amounts, including the establishment of adequate reserves for any taxes and tax expenses; neither the Released Parties, Defense Counsel, nor Class Counsel are responsible nor shall they have any liability therefor. The Settling Parties agree to cooperate with the Settlement Administrator, Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Article 5.

5.4. Within thirty (30) calendar days after the later of (a) the date the Preliminary Approval Order is entered, or (b) the date the Qualified Settlement Fund is established and the Settlement Administrator (or Class Counsel) has furnished to Defendants and/or Defense Counsel in writing the Qualified Settlement Fund name, IRS W-9 Form, and all necessary wiring instructions, then the Transferor and/or Defendants' insurer(s) shall deposit $100,000 into the Qualified Settlement Fund as the first installment of the Gross Settlement Amount.

5.5. Within twenty-one (21) calendar days after the Settlement Effective Date, the Transferor and/or Defendants' insurer(s) shall deposit the remainder of the Gross Settlement Amount, which is $2,650,000, into the Qualified Settlement Fund.

5.6. The Settlement Administrator shall, at the written direction of Class Counsel, cause the Escrow Agent to invest the Qualified Settlement Fund in short-term United States Agency or Treasury Securities or other instruments backed by the Full Faith and Credit of the United States Government or an agency thereof, or fully insured by the United States Government or an agency thereof, and shall cause the Escrow

Agent to reinvest the proceeds of these investments as they mature in similar instruments at their then-current market rates.

5.7. The Settlement Administrator shall not disburse the Gross Settlement Amount or any portion thereof from the Qualified Settlement Fund except as provided in this Settlement Agreement, in an order of the Court, or in a subsequent written stipulation between Class Counsel and Defense Counsel. Subject to the orders of the Court, the Settlement Administrator is authorized to execute such transactions as are consistent with the terms of this Settlement Agreement.

5.8. The Settlement Administrator shall be responsible for making provision for the payment from the Qualified Settlement Fund of all taxes and tax expenses, if any, owed with respect to the Qualified Settlement Fund, and for all tax reporting, remittance, and/or withholding obligations, if any, for amounts distributed from it. The Released Parties, Defense Counsel, and/or Class Counsel have no responsibility or any liability for any taxes or tax expenses owed by, or any tax reporting or withholding obligations, if any, of the Qualified Settlement Fund.

5.9. No later than February 15 of the year following the calendar year in which the Transferor and/or Defendants' insurer(s) makes any transfer of the Gross Settlement Amount, or any other amount, to the Qualified Settlement Fund on behalf of the Transferor pursuant to the terms of this Article 5, the Transferor shall timely furnish a statement to the Settlement Administrator that complies with Treas. Reg. § 1.468B-3(e)(2), which may be a combined statement under Treas. Reg. § 1.468B-3(e)(2)(ii), and shall attach a copy of the statement to its federal income

tax return filed for the taxable year in which the Transferor and/or Defendants' insurer(s) makes a transfer on its behalf to the Qualified Settlement Fund.

## 6. PAYMENTS FROM THE QUALIFIED SETTLEMENT FUND

6.1. Disbursements from Qualified Settlement Fund prior to Settlement Effective Date. Class Counsel, subject to the approval of Defendants, which approval shall not be unreasonably withheld, shall direct the Escrow Agent to disburse money from the Qualified Settlement Fund as follows:

6.1.1. Settlement Notice Expenses. After entry of the Preliminary Approval Order, the Escrow Agent shall be directed in writing to disburse from the Qualified Settlement Fund an amount sufficient for the payment of costs of the Settlement Notice. Class Counsel will select a Settlement Administrator to assist with Class Notice and administration of the Settlement, subject to the agreement of Defendants, which agreement shall not unreasonably be withheld. The Settlement Administrator shall enter into a confidentiality agreement and information security agreement to adequately protect information provided to the Settlement Administrator relating to the Settlement. Any costs, expenses, or fees incurred in connection with the administration of this Settlement shall be paid out of the Qualified Settlement Fund. Neither Defendants nor Defense Counsel are responsible for the Settlement Administrator's work, nor may they be held liable for any act or omission by the Settlement Administrator.

6.1.2. For taxes and expenses of the Qualified Settlement Fund as provided in Section 5.3.

6.1.3. For fees and expenses of the Independent Fiduciary. The Escrow Agent shall be directed to disburse money from the Qualified Settlement Fund to pay the reasonable fees and expenses of the Independent Fiduciary (which shall include any attorneys' fees of the Independent Fiduciary) retained pursuant to Article 3.1.

6.1.4. For all fees and expenses incurred by the Plan's Recordkeeper in administering the settlement.

6.1.5. For costs and expenses of the Settlement Administrator in implementing the Plan of Allocation and otherwise administering the Settlement.

6.1.6. To the extent the Transferor and/or Defendants' insurer(s) pay any costs, fees or expenses associated with the Settlement, including to the Independent Fiduciary, before proceeds from the Qualified Settlement Fund are available for distribution, the Escrow Agent shall be directed to reimburse the Transferor and/or Defendants' insurer(s) for such amounts.

6.2. Following the payment of the second installment of the Gross Settlement Amount as set forth in Section 5.5, Class Counsel shall direct the Escrow Agent to disburse money from the Qualified Settlement Fund as follows:

6.2.1. For Attorneys' Fees and Costs, as approved by the Court, and no later than five (5) business days following the payment of the second installment of the Gross Settlement Amount as set forth in Section 5.5.

6.2.2. For Class Representatives' Case Contribution Awards, as approved by the Court, and no later than five (5) business days following the payment of the second installment of the Gross Settlement Amount as set forth in Section 5.5.

6.2.3. For costs and expenses of the Settlement Administrator in implementing the Plan of Allocation and otherwise administering the Settlement that were not previously paid.

6.2.4. For reasonable costs and expenses incurred by the Recordkeeper (or Authorized Administrator) in implementing this Settlement that were not previously paid. To the extent that Defendants are responsible for paying these costs, they will have the right to recover any sums paid from the Qualified Settlement Fund.

6.2.5. The Net Settlement Amount will be distributed in accordance with the Plan of Allocation. Pending final distribution of the Net Settlement Amount in accordance with the Plan of Allocation, the Escrow Agent will maintain the Qualified Settlement Fund.

6.3. Implementation of the Plan of Allocation. Class Counsel shall propose to the Court a Plan of Allocation, in substantial conformity to the one attached as Exhibit B, which shall provide for the calculation, allocation, and distribution of the Net Settlement Amount. The Settlement Administrator shall be exclusively responsible and liable for calculating the amounts payable to the Class Members pursuant to the Plan of Allocation. Upon the Settlement Effective Date, and after the amounts payable pursuant to Sections 6.1 and 6.2 have been disbursed, or, in the case of future estimated expenses set aside and withheld, Class Counsel shall direct the Escrow Agent to disburse the Net Settlement Amount as provided by this Settlement Agreement and the Plan of Allocation. The Recordkeeper or any other entity with appropriate authority under the Plan (an Authorized Administrator) shall

allocate to the Plan's accounts of Class Members who are not Former Participants any Net Settlement Amount as calculated by the Settlement Administrator according to the Plan of Allocation, documentation of which Class Counsel shall direct the Settlement Administrator to provide to the Authorized Administrator pursuant to the Plan of Allocation no later than the distribution of the Net Settlement Amount. The Settlement Administrator shall promptly notify Class Counsel as to the date(s) and amounts(s) of said allocation(s) made to Class Members who are not Former Participants. The Settlement Administrator shall be responsible for distributing the Net Settlement Amount allocated to the Former Participants as provided by the Plan of Allocation, as well as complying with all tax laws, rules, and regulations and withholding obligations with respect to Former Participants. Defendants shall have no liability related to the structure or taxability of such payments. Nothing herein shall constitute approval or disapproval of the Plan of Allocation by Defendants, and Defendants shall have no responsibility or liability for the Plan of Allocation and shall take no position for or against the Plan of Allocation.

6.4. The Parties intend that the Net Settlement Amount distributed pursuant to the Plan of Allocation shall constitute "restorative payments" within the meaning of Revenue Ruling 2002-45 for all purposes.

6.5. <u>Final List of Class Members</u>. Prior to the disbursement of the Net Settlement Amount to the Plan, the Settlement Administrator shall provide to Defense Counsel and Class Counsel a final list of Class Members, in electronic format, to whom the

Net Settlement Amount will be distributed in accordance with the Plan of Allocation.

6.6. After the distribution of the Net Settlement Amount and allocation of the Net Settlement Amount pursuant to the Plan of Allocation, amounts allocable to Class Members who cannot be located or otherwise cannot receive their Settlement payment shall revert to the Qualified Settlement Fund. Any Net Settlement Amount remaining in the Qualified Settlement Fund after distributions, including costs, taxes, and interest earned on the Qualified Settlement Fund, shall be deposited into the Plan for the purpose of defraying administrative fees and expenses of the Plan that would otherwise be charged to the Plan's participants.

**7. ARTICLE 7 – ATTORNEYS' FEES AND EXPENSES**

7.1. Application for Attorneys' Fees and Expenses and Class Representatives' Case Contribution Awards. Class Counsel intends to seek to recover their attorneys' fees not to exceed 35% of the Gross Settlement Amount, and litigation costs and expenses advanced and carried by Class Counsel for the duration of the Class Action, which shall be recovered from the Gross Settlement Amount. Class Counsel also intends to seek Class Representatives' Case Contribution Awards, in an amount not to exceed $5,000.00 for each Class Representative, which shall be recovered from the Gross Settlement Amount.

7.2. Class Counsel will file a motion for an award of Attorneys' Fees and Costs no later than 45 calendar days before the date of the Fairness Hearing specified in the Preliminary Approval Order.

## 8. ARTICLE 8 – RELEASE AND COVENANT NOT TO SUE

8.1. As of the Settlement Effective Date, the Plan (subject to Independent Fiduciary approval as required by Section 3.1), Class Representatives, and Class Members (and their respective heirs, beneficiaries, executors, administrators, estates, past and present partners, officers, directors, agents, attorneys, predecessors, successors, and assigns), on their own behalf and on behalf of the Plan, shall fully, finally, and forever settle, release, relinquish, waive, and discharge all Released Parties from the Released Claims, whether or not such Class Members have received or will receive a monetary benefit from the Settlement, whether or not such Class Members have actually received or read the Settlement Notice, whether or not such Class Members have filed an objection to the Settlement or to any application by Class Counsel for an award of Attorneys' Fees and Costs, and whether or not the objections or claims for distribution of such Class Members have been approved or allowed.

8.2. As of the Settlement Effective Date, the Class Representatives, the Class Members, and the Plan (subject to Independent Fiduciary approval as required by Section 3.1) expressly agree that they, acting individually or together, or in combination with others, shall not sue or seek to institute, maintain, prosecute, argue, or assert in any action or proceeding (including but not limited to an IRS determination letter proceeding, a Department of Labor proceeding, an arbitration, or a proceeding before any state insurance or other department or commission), any cause of action, demand, or claim on the basis of, connected with, or arising out of any of the Released Claims. Nothing herein shall preclude any action to enforce the terms of

this Settlement Agreement in accordance with the procedures set forth in this Settlement Agreement.

8.3. Class Counsel, the Class Representatives, Class Members, or the Plan may hereafter discover facts in addition to or different from those that they know or believe to be true with respect to the Released Claims. Such facts, had they been known, might have affected the decision to settle with the Released Parties, or the decision to release, relinquish, waive, and discharge the Released Claims, or the decision of a Class Member not to object to the Settlement. Notwithstanding the foregoing, each Class Member and the Plan shall expressly, upon the entry of the Final Approval Order, be deemed to have, and, by operation of the Final Approval Order, shall have fully, finally, and forever settled, released, relinquished, waived, and discharged any and all Released Claims. The Class Representatives, Class Members, and the Plan acknowledge and shall be deemed by operation of the Final Approval Order to have acknowledged that the foregoing waiver was bargained for separately and is a key element of the Settlement embodied in this Settlement Agreement of which this release is a part.

8.4. Each Class Representative, each Class Member, and the Plan hereby stipulate and agree with respect to any and all Released Claims that, upon entry of the Final Approval Order, the Class Members and Plan shall be conclusively deemed to, and by operation of the Final Approval Order shall settle, release, relinquish, waive, and discharge any and all rights or benefits under any law relating to the releases of unknown claims pertaining specifically to Section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Also, the Class Representatives, Class Members, and the Plan shall, upon entry of the Final Approval Order with respect to the Released Claims, waive any and all provisions, rights, and benefits conferred by any law or of any State or territory within the United States or any foreign country, or any principle of common law, which is similar, comparable, or equivalent in substance to Section 1542 of the California Civil Code.

8.5. Dismissal With Prejudice. The Class Action and all Released Claims shall be dismissed with prejudice.

8.6. No Impact on Prior Releases. The Released Claims in the Class Action shall not invalidate or impair any prior release of claims by any Class Members against any of the Released Parties.

## 9. ARTICLE 9 – COVENANTS

The Settling Parties covenant and agree as follows:

9.1. Taxation. Plaintiffs acknowledge that the Released Parties have no responsibility for any taxes due on funds deposited in or distributed from the Qualified Settlement Fund or that the Plaintiffs or Class Counsel receive from the Gross Settlement Amount. Plaintiffs further acknowledge that any such tax payments, and any professional, administrative, or other expenses associated with such tax payments, shall be paid out of the Qualified Settlement Fund. Nothing herein shall constitute an admission or representation that any such taxes will or will not be due.

9.2. Cooperation. Defendants shall cooperate with Class Counsel by using reasonable efforts to provide, to the extent reasonably accessible, information to identify Class Members and to implement the Plan of Allocation.

9.2.1. Defendants or Defense Counsel shall work with the Recordkeeper to provide to the Settlement Administrator and/or Class Counsel data regarding Class Members as of the most recent quarter-end available on the Recordkeeper's system (including names, dates of birth, the final four digits of social security numbers, employee identification numbers, dates of employment, last known primary address, contact information, Beneficiary and Alternate Payee information (as applicable), and end-of-quarter account balances throughout the Class Period), for purposes of effecting the administration of the Plan of Allocation. Neither Plaintiffs, Class Counsel, Defendants, or Defense Counsel will be responsible or liable in any way for ensuring the completeness or accuracy of the information provided by the Recordkeeper pursuant to this section.

9.2.2. The Settlement Administrator shall use the information provided by Defendants, Defense Counsel, and/or the Recordkeeper pursuant to Section 9.2.1 to compile a preliminary list of Class Members for purposes of sending the Class Notice and calculating payments pursuant to the Plan of Allocation.

9.2.3. Class Counsel and their agents will use any information provided by Defendants, Defense Counsel, and/or the Recordkeeper pursuant to Section 9.2.1 solely and for no other purpose than providing notice and

administering this Settlement and will take all reasonable and necessary steps as required by law to maintain the security and confidentiality of this information.

9.3. The Settling Parties shall reasonably cooperate with each other to effectuate this Settlement, including with respect to the Plan of Allocation, and shall not do anything or take any position inconsistent with obtaining a prompt Final Approval Order approving the Settlement unless expressly permitted by this Settlement Agreement. The Settling Parties shall suspend any and all efforts to prosecute and to defend the Class Action pending entry of the Final Approval Order or, if earlier, termination of the Settlement Agreement.

## 10. ARTICLE 10 – REPRESENTATION AND WARRANTIES

10.1. Settling Parties' Representations and Warranties. The Settling Parties, and each of them, represent and warrant as follows, and each Settling Party acknowledges that each other Settling Party is relying on these representations and warranties in entering into this Settlement Agreement:

10.1.1. That they have diligently prepared the case pursuant to the Court's orders; that they are voluntarily entering into this Settlement Agreement as a result of arm's-length negotiations under the auspices of the Mediator; that in executing this Settlement Agreement they are relying solely upon their own judgment, belief, and knowledge, and the advice and recommendations of their own independently selected counsel, concerning the nature, extent, and duration of their rights and claims hereunder and regarding all matters which relate in any way to the subject matter hereof; and that, except as

provided herein, they have not been influenced to any extent whatsoever in executing this Settlement Agreement by any representations, statements, or omissions pertaining to any of the foregoing matters by any Settling Party or by any Person representing any Settling Party to this Settlement Agreement. Each Settling Party assumes the risk of mistake as to facts or law. Each Settling Party further recognizes that additional evidence may come to light, but that they nevertheless desire to avoid the expense and uncertainty of litigation by entering into the Settlement.

10.1.2. That they have carefully read the contents of this Settlement Agreement, and this Settlement Agreement is signed freely by each Person executing this Settlement Agreement on behalf of each of the Settling Parties. The Settling Parties, and each of them, further represent and warrant to each other that he, she, they, or it has made such investigation of the facts pertaining to the Settlement, this Settlement Agreement, and all of the matters pertaining thereto, as he, she, they, or it deems necessary.

10.2. Signatories' Representations and Warranties. Each Person executing this Settlement Agreement on behalf of any other Person does hereby personally represent and warrant to the other Settling Parties that he, she, they, or it has the authority to execute this Settlement Agreement on behalf of, and fully bind, each principal whom such individual represents or purports to represent.

**11. ARTICLE 11 – NO ADMISSION OF LIABILITY**

11.1. The Settling Parties understand and agree that this Settlement Agreement embodies a compromise settlement of disputed claims, and that nothing in this Settlement

Agreement, including the furnishing of consideration for this Settlement Agreement, shall be deemed to constitute any finding, admission, or suggestion of any wrongdoing or liability by any Defendants, or give rise to any inference of wrongdoing or admission of wrongdoing or liability in this or any other proceeding.

11.2. This Settlement Agreement and the payments made hereunder are made in compromise of disputed claims and are not admissions of any liability of any kind, whether legal or factual. Defendants specifically deny any such liability or wrongdoing and state that they are entering into this Settlement Agreement to eliminate the burden and expense of further litigation. Further, the Class Representatives, while believing that the claims brought in the Class Action have merit, have concluded that the terms of this Settlement Agreement are fair, reasonable, and adequate to the Plan, themselves, and members of the Settlement Class given, among other things, the inherent risks, difficulties, and delays in complex ERISA litigation such as the Class Action. Neither the fact nor the terms of this Settlement Agreement shall be used, offered, or received in evidence in any action or proceeding for any purpose, except in an action or proceeding to enforce this Settlement Agreement or arising out of or relating to the Final Approval Order.

**12. ARTICLE 12 – CONDITIONS TO FINALITY OF SETTLEMENT**

This Settlement shall be contingent upon each of the following conditions in this Article 12 being satisfied. The Settling Parties agree that if any of these conditions is not satisfied, then this Settlement Agreement is terminated (subject to Defendants' right to waive the condition set forth in Section 12.4) and the Class Action will, for all purposes with respect to the Settling Parties, revert to its status as of the Settlement Agreement Execution Date. In such event, Defendants will

not be deemed to have consented to the class certification order referenced in Section 12.1, the agreements and stipulations in this Settlement Agreement concerning class definition or class certification shall not be used as evidence or argument to support a motion for class certification, and Defendants will retain all rights with respect to challenging class certification.

12.1. Court Approval and Class Certification for Settlement Purposes. The Court shall have certified the Settlement Class for settlement purposes only (and Defendants will not object to this certification for settlement purposes only), the Settlement shall have been approved by the Court, the Court shall have entered the Final Approval Order in a form which is otherwise agreed to by the Settling Parties, and the Settlement Effective Date shall have occurred.

12.2. Finality of Settlement. The Settlement shall have become Final.

12.3. Resolution of CAFA Objections (If Any). In the event that any government official who received a CAFA Notice objects to and requests modification(s) to the Settlement, Class Representatives and Class Counsel agree to cooperate and work with Defendants and Defense Counsel to overcome such objection(s) and requested modification(s).

12.4. Settlement Authorized by Independent Fiduciary. At least thirty (30) calendar days before the Fairness Hearing, the Independent Fiduciary shall have approved and authorized in writing the Settlement and given a release to all the Released Parties in its capacity as fiduciary of the Plan, for and on behalf of the Plan in accordance with PTE 2003-39. If the Independent Fiduciary disapproves or otherwise does not authorize the Settlement or refuses to execute the release on behalf of the Plan, then the Settling Parties may mutually agree to modify the terms of this Settlement

Agreement as necessary to facilitate an approval by the Independent Fiduciary and/or the Independent Fiduciary's release on behalf of the Plan. Otherwise, Defendants shall have the option to waive this condition, in which case such option is to be exercised in writing within ten (10) business days after the Settling Parties' receipt of the Independent Fiduciary's written determination, unless otherwise agreed by the Settling Parties.

## 13. ARTICLE 13 – TERMINATION, CONDITIONS OF SETTLEMENT, AND EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION

13.1. The Settlement Agreement shall automatically terminate, and thereby become null and void with no further force or effect if:

13.1.1. Under Section 3.1, (a) either the Independent Fiduciary does not approve the Settlement Agreement or disapproves the Settlement Agreement for any reason whatsoever, or Defendants reasonably conclude that the Independent Fiduciary's approval does not include the determinations required by the PTE 2003-39; and (b) the Settling Parties do not mutually agree to modify the terms of this Settlement Agreement to facilitate an approval by the Independent Fiduciary or the Independent Fiduciary's determinations required by PTE 2003-39; and (c) Defendants do not exercise their option to waive this condition as provided in Section 12.4;

13.1.2. The Preliminary Approval Order or the Final Approval Order is not entered by the Court in substantially the form submitted by the Settling Parties or in a form which is otherwise agreed to by the Settling Parties;

13.1.3. The Settlement Class is not certified as defined herein or in a form which is otherwise agreed to by the Settling Parties;

13.1.4. This Settlement Agreement is disapproved by the Court or fails to become effective and the Settling Parties do not mutually agree to modify the Settlement Agreement in order to obtain the Court's approval or otherwise effectuate the Settlement; or

13.1.5. The Preliminary Order or Final Approval Order is finally reversed on appeal, or is materially modified on appeal, and the Settling Parties do not mutually agree to any such material modifications.

13.2. If the Settlement Agreement is terminated, deemed null and void, or has no further force or effect, the Class Action and the Released Claims asserted by the Class Representatives shall for all purposes with respect to the Settling Parties revert to their status as though the Settling Parties never executed the Settlement Agreement. All funds deposited in the Qualified Settlement Fund, and any interest earned thereon, shall be returned to Defendants' insurer(s) within thirty (30) calendar days after the Settlement Agreement is finally terminated or deemed null and void.

13.3. It shall not be deemed a failure to approve the Settlement Agreement if the Court denies, in whole or in part, Class Counsel's request for Attorneys' Fees and Costs and/or the Class Representatives' Case Contribution Awards and/or modifies any of the proposed orders relating to Attorneys' Fees and Costs and/or the Class Representatives' Case Contribution Awards.

## 14. ARTICLE 14 – CONFIDENTIALITY OF THE SETTLEMENT NEGOTIATIONS AND PERMITTED SETTLEMENT-RELATED COMMUNICATIONS

14.1. Except as set forth explicitly below, the Settling Parties, Class Counsel, and Defense Counsel agree to keep confidential all positions, assertions, and offers made during settlement negotiations relating to the Class Action and the Settlement

Agreement, except that they may discuss the negotiations with the Class Members, the Independent Fiduciary, and the Settling Parties' auditors, tax, legal, and regulatory advisors, provided in each case that they comply with this Article 14 in all other respects.

14.2. The Settlement Administrator, at the direction of Class Counsel, will establish a Settlement Website on which it will post the following documents or links to the following documents following the date of the Preliminary Approval Order: the Complaint, Settlement Agreement and its Exhibits, Settlement Notice, Former Participant Claim Form, Plaintiffs' Motion for Attorneys' Fees and Costs and Class Representatives' Case Contribution Awards, any Court orders related to the Settlement, any amendments or revisions to these documents, and any other documents or information mutually agreed upon by the Settlement Parties. The Settlement Administrator will take down the Settlement Website no later than ninety (90) days after it sends notice to Class Counsel and Defense Counsel that it has completed all aspects of the Plan of Allocation.

14.3. Class Representatives and Class Counsel agree that they will not at any time make (or encourage or induce others to make) any public statement regarding the Class Action or the Settlement that disparages any Released Party; provided, however, that this prohibition does not preclude Class Counsel from restating the allegations made in the Complaint for purposes of the motion for preliminary approval of the Settlement, motion for final approval of the Settlement, or the request for Attorney's Fees and Costs, Administrative Expenses, and Class Representatives' Case Contribution Awards, or as necessary to provide notice to the Settlement

Class. This prohibition does not prohibit any Settling Party from making any statements pursuant to a valid legal process, a request by a regulatory agency, or as required by law.

14.4. Class Representatives and Class Counsel agree that they will not issue any press release regarding the Settlement, advertise the Settlement, or affirmatively contact any media sources regarding the Settlement. Nothing in this section shall prevent Class Counsel from maintaining non-confidential information related to the Settlement on their websites or firm resumés or biographies, nor shall this section prevent notice as otherwise agreed upon by the Settling Parties.

14.5. Class Representatives and Class Counsel agree that they will not publicly disclose the terms of the Settlement until after the motion for preliminary approval of the Settlement has been filed with the Court, other than as necessary to administer the Settlement, or unless such disclosure is pursuant to a valid legal process, a request by a regulatory agency, or as otherwise required by law, government regulations, or order of the Court.

## 15. ARTICLE 15 – ADDITIONAL TERMS

15.1. As further consideration for this Settlement, Defendants agree to conduct a request for proposal ("RFP"), within nine months of the Settlement Effective Date, for an unaffiliated "investment manager" as defined in ERISA § 3(38), 29 U.S.C. § 1002(38), to assume fiduciary authority and discretion with respect to the Plan's investment options (other than the SEI Company Stock Fund and the current brokerage account option), including with the authority and discretion to remove any Plan investment options as the investment manager deems prudent. As

necessary, Defendants will undertake reasonable efforts to make all necessary amendments to the Plan, service provider contracts, and/or other Plan-related materials to effectuate and implement such an engagement.

## 16. ARTICLE 16 – GENERAL PROVISIONS

16.1. The Settling Parties agree to cooperate fully with each other in seeking Court approvals of the Preliminary Approval Order and the Final Approval Order, and to undertake all tasks as may reasonably be required to effectuate preliminary and final approval and the implementation of this Settlement Agreement according to its terms. The Settling Parties agree to provide each other with copies of any filings necessary to effectuate this Settlement reasonably in advance of filing.

16.2. This Settlement Agreement, whether or not consummated, and any negotiations or proceedings hereunder are not, and shall not be construed as, deemed to be, or offered or received as evidence of an admission by or on the part of any Released Party of any wrongdoing, fault, or liability whatsoever by any Released Party, or give rise to any inference of any wrongdoing, fault, or liability or admission of any wrongdoing, fault, or liability in the Class Action or any other proceeding.

16.3. Defendants and the Released Parties admit no wrongdoing, fault, or liability with respect to any of the allegations or claims in the Class Action. This Settlement Agreement, whether or not consummated, and any negotiations or proceedings hereunder, shall not constitute admissions of any liability of any kind, whether legal or factual. Subject to Federal Rule of Evidence 408, the Settlement and the negotiations related to it are not admissible as substantive evidence, for purposes of impeachment, or for any other purpose.

16.4. Defendants deny all allegations of wrongdoing. Defendants believe that the Plan has been managed, operated, and administered at all relevant times reasonably and prudently, in the best interest of the Plan's participants, and in accordance with ERISA, including ERISA's fiduciary duty and prohibited transaction provisions.

16.5. Neither the Settling Parties, Class Counsel, nor Defense Counsel shall have any responsibility for or liability, absent instances of fraud or willful misconduct with respect to (a) any act, omission, or determination of the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Gross Settlement Amount or otherwise; (b) the determination of the Independent Fiduciary; (c) the management, investment, or distribution of the Qualified Settlement Fund; (d) the Plan of Allocation as approved by the Court; (e) the determination, administration, calculation, or payment of any claims asserted against the Qualified Settlement Fund; (f) any losses suffered by, or fluctuations in the value of, the Qualified Settlement Fund; or (g) the payment or withholding of any taxes, expenses, and/or costs incurred in connection with the taxation of the Qualified Settlement Fund or tax reporting, or the filing of any returns . Further, neither Defendants nor Defense Counsel shall have any responsibility for, or liability whatsoever with respect to, any act, omission, or determination of Class Counsel in connection with the administration of the Gross Settlement Amount or otherwise.

16.6. The Released Parties shall not have any responsibility for or liability whatsoever with respect to the Plan of Allocation, including but not limited to the determination of the Plan of Allocation or the reasonableness of the Plan of Allocation.

16.7. The Settling Parties acknowledge that any payments to Class Members or their attorneys may be subject to applicable tax laws. Defendants, Defense Counsel, Class Counsel, and Plaintiffs will provide no tax advice to Class Members and make no representation regarding the tax consequences of any of the payments described in the Settlement Agreement. To the extent that any portion of any Settlement payment is subject to income or other tax, the recipient of the payment shall be responsible for payment of such tax. Deductions will be made, and reporting will be performed by the Settlement Administrator, as required by law in respect of all payments made under the Settlement Agreement. Payments from the Qualified Settlement Fund shall not be treated as wages by the Settling Parties.

16.8. Each Class Member who receives a payment under this Settlement Agreement shall be fully and ultimately responsible for payment of any and all federal, state, or local taxes resulting from or attributable to the payment received by such person. Each such Class Member shall hold the Released Parties, Defense Counsel, Class Counsel, and the Settlement Administrator harmless from any tax liability, including penalties and interest, related in any way to payments under the Settlement Agreement, and shall hold the Released Parties, Defense Counsel, Class Counsel, and the Settlement Administrator harmless from the costs (including, for example, attorneys' fees and disbursements) of any proceedings (including, for example, investigation and suit), related to such tax liability.

16.9. Only Class Counsel may seek enforcement of this Settlement Agreement on behalf of Plaintiffs and Class Members. Any individual concerned about Defendants' compliance with this Settlement Agreement may so notify Class Counsel and direct

any requests for enforcement to them. Class Counsel shall have the full and sole discretion to take whatever action they deem appropriate, or to refrain from taking any action, in response to such request. Any action by Class Counsel to monitor or enforce the Settlement Agreement shall be without additional fee or reimbursement of expenses beyond the Attorneys' Fees and Costs determined by the Court.

16.10. This Settlement Agreement shall be interpreted, construed, and enforced in accordance with applicable federal law and, to the extent that federal law does not govern, Pennsylvania law.

16.11. The Settling Parties agree that the Court has personal jurisdiction over the Settlement Class and Defendants and shall maintain personal and subject-matter jurisdiction for purposes of resolving any disputes between the Settling Parties concerning compliance with this Settlement Agreement. Any motion or action to enforce this Settlement Agreement—including by way of injunction—shall be filed in the U.S. District Court for the Eastern District of Pennsylvania or asserted by way of an affirmative defense or counterclaim in response to any action asserting a violation of the Settlement Agreement.

16.12. Each party to this Settlement Agreement hereby acknowledges that he, she, they, or it has consulted with and obtained the advice of counsel prior to executing this Settlement Agreement and that this Settlement Agreement has been explained to that party by his, her, their, or its counsel.

16.13. Before entry of the Preliminary Approval Order and approval of the Independent Fiduciary, this Settlement Agreement may be modified or amended only by written agreement signed by or on behalf of all Settling Parties. Following approval by the

Independent Fiduciary, this Settlement Agreement may be modified or amended only if such modification or amendment is set forth in a written agreement signed by or on behalf of all Settling Parties and only if the Independent Fiduciary approves such modification or amendment in writing. Following entry of the Preliminary Approval Order, this Settlement Agreement may be modified or amended only by written agreement signed on behalf of all Settling Parties, and only if the modification or amendment is approved by the Independent Fiduciary in writing and approved by the Court.

16.14. The provisions of this Settlement Agreement may be waived only by an instrument in writing executed by the waiving party and specifically waiving such provisions. The waiver of any breach of this Settlement Agreement by any party shall not be deemed or construed as a waiver of any other breach or waiver by any other party, whether prior, subsequent, or contemporaneous, of this Settlement Agreement.

16.15. Each of the Settling Parties agrees, without further consideration, and as part of finalizing the Settlement hereunder, that it will in good faith execute and deliver such other documents and take such other actions as may be necessary to consummate and effectuate the subject matter of this Settlement Agreement.

16.16. All of the exhibits attached hereto are incorporated by reference as though fully set forth herein. The exhibits shall be: Exhibit A – Notice of Class Action Settlement and Fairness Hearing; Exhibit A-1 – Former Participant Claim Form; Exhibit B – Plan of Allocation; Exhibit C – Preliminary Approval Order.

16.17. No provision of the Settlement Agreement or of the exhibits attached hereto shall be construed against or interpreted to the disadvantage of any party to the

Settlement Agreement because that party is deemed to have prepared, structured, drafted, or requested the provision.

16.18. Principles of Interpretation. The following principles of interpretation apply to this Settlement Agreement:

16.18.1. Headings. Any headings in this Settlement Agreement are only for convenience and do not limit, alter, or affect the matters contained in this Settlement Agreement or the Articles or Sections they caption.

16.18.2. Singular and Plural. Definitions apply to the singular and plural forms of each term defined.

16.18.3. Gender. Definitions apply to the masculine, feminine, non-binary, and neuter genders of each term defined.

16.18.4. References to a Person. References to a Person are also to the Person's permitted successors and assigns, except as otherwise provided herein.

16.18.5. Terms of Inclusion. Whenever the words "include," "includes," or "including" are used in this Settlement Agreement, they shall not be limiting but rather shall be deemed to be followed by "without limitation."

16.19. Survival. All of the covenants, representations, and warranties, express or implied, oral or written, concerning the subject matter of this Settlement Agreement are contained in this Settlement Agreement. No Party is relying on any oral representations or oral agreements. All such covenants, representations, and warranties set forth in this Settlement Agreement shall be deemed continuing and shall survive the Settlement Effective Date.

16.20. Notices. Any notice, demand, or other communication under this Settlement Agreement (other than the Settlement Notice, or other notices given at the direction of the Court) shall be in writing and shall be deemed duly given upon receipt if it is addressed to each of the intended recipients as set forth below and personally delivered, sent by registered or certified mail postage prepaid, or delivered by reputable express overnight courier or via e-mail:

IF TO CLASS REPRESENTATIVES:

Matthew J. Langley
Christopher M. Nienhaus
ALMEIDA LAW GROUP LLC
849 W. Webster Avenue
Chicago, IL 60614
Tel: (773) 554-9354
matt@almeidalawgroup.com
chris@almeidalawgroup.com

IF TO DEFENDANTS:

Jeremy P. Blumenfeld
MORGAN, LEWIS & BOCKIUS, LLP
2222 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5258
jeremy.blumenfeld@morganlewis.com

Any Settling Party may change the address at which it is to receive notice by written notice delivered to the other Settling Parties in the manner described above.

16.21. Entire Agreement. This Settlement Agreement and the attached exhibits constitute the entire agreement among the Settling Parties. No representations, warranties, or inducements have been made to any party concerning the Settlement other than those in this Settlement Agreement and its exhibits. It specifically supersedes any settlement terms or settlement agreements relating to the Defendants that were previously agreed upon orally or in writing by any of the Settling Parties.

16.22. Counterparts. The Settlement Agreement may be executed by exchange of executed signature pages, and any signature transmitted by facsimile or e-mail attachment of scanned signature pages for the purpose of executing this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement.

The Settlement Agreement may be executed in any number of counterparts, and each of such counterparts shall for all purposes be deemed an original, and all such counterparts shall together constitute the same instrument.

16.23. Binding Effect. This Settlement Agreement binds and inures to the benefit of the Settling Parties hereto, their assigns, heirs, administrators, executors, and successors.

16.24. Destruction/Return of Confidential Information. Within thirty (30) days after the Final Approval Order, Class Representatives and Class Counsel shall make reasonable efforts to either return or destroy all documents or other materials produced or designated as Confidential. Class Counsel shall certify to Defendants that all such materials have been destroyed to the extent practicable. The Settling Parties agree that the preliminary and final lists of Class Members are deemed Confidential, and the Settling Parties shall have the right to continue to designate documents provided to any party in connection with this Settlement Agreement as Confidential.

IN WITNESS WHEREOF, the Settling Parties have executed this Settlement Agreement on the dates set forth below.

Date: October 28, 2026

On Behalf of Plaintiffs, Individually and as Representatives of the Settlement Class:

Matthew J. Langley (*pro hac vice*)
Christopher M. Nienhaus (*pro hac vice*)
ALMEIDA LAW GROUP LLC
849 W. Webster Avenue
Chicago, IL 60614
Tel: (312) 576-3024
matt@almeidalawgroup.com
chris@almeidalawgroup.com

Austin B. Cohen
Charles E. Schaffer
LEVIN SEDRAN & BERMAN LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
acohen@lfsblaw.com
cschaffer@lfsblaw.com

*Counsel for Plaintiffs, the Plan, and the Settlement Class*

David Hall

David Hall
Plaintiff & proposed Class Representative

Jennifer Knapp
Plaintiff & proposed Class Representative

Date: October 28, 2026

On Behalf of Defendants SEI Investments Company, SEI Investments Management Corporation, and SEI Capital Accumulation Plan Administration Committee

Jeremy P. Blumenfeld

Jeremy P. Blumenfeld
C. Praise Oh
MORGAN, LEWIS & BOCKIUS, LLP
2222 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5000
Fax: (215) 963-5001
jeremy.blumenfeld@morganlewis.com
praise.oh@morganlewis.com

Matthew A. Russell (pro hac vice)
MORGAN, LEWIS & BOCKIUS, LLP
110 North Wacker Drive, Suite 2800
Chicago, IL 60606
Tel: (312) 324-1000
Fax: (312) 324-1001
matthew.russell@morganlewis.com

Mathew J. McKenna (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS, LLP
One Federal Street
Boston, MA 02110
Tel: (617) 341-7700
Fax: (617) 341-7701
mathew.mckenna@morganlewis.com

*Counsel for Defendants*